**TEXAS CO. et al. v. PANHANDLE INDE-PENDENT SCHOOL DIST. et al.**

**No. 4227.**

Court of Civil Appeals of Texas. Amarillo.

May 14, 1934.

Rehearing Denied June 25, 1934.

J. R. Porter, of Clarendon, for appellants.

H. H. Smith, of Panhandle, and Hoover, Hoover & Cussen, of Canadian, for appellees.

JACKSON, Justice.

The plaintiffs, the Texas Company and eight other corporations, applied to the district court of Carson county for an injunction to restrain the Panhandle independent school district and its officers from collecting or attempting to collect from plaintiffs on their respective properties in said school district any tax for the year 1932 in excess of 35 cents on the $100 valuation, and to secure a mandatory order directing the defendants to transfer to the proper account the different funds on hand belonging to the district.

A hearing was had before the court on the merits of plaintiffs' application, and, from a judgment denying them relief, this appeal is prosecuted.

The appellants contend that the levy of 85 cents on the $100 valuation for the year 1932, 60 cents thereof for the general fund and 25 cents for the sinking fund, produced more revenue than was needed or necessary to pay the principal due and accrued interest on the bonded indebtedness and to pay the current expenses for maintaining the school, and was therefore excessive, illegal, and void.

It is admitted that the Panhandle independent school district had been legally organized and duly authorized to levy a tax not exceeding 100 cents on the $100 valuation on the property in the district for school purposes. It is also conceded that the levy was regular, made in good faith, and that appellees were not guilty of actual fraud.

The record discloses that the district in 1908 issued "Panhandle Independent School District School House Bonds of the denomination of $1,000.00 each," dated May 1, 1908, and payable annually, with the option "of redeeming the same at any time after twenty years" from their date.

On April 10, 1930, the district exercised its option, paid off said bonds, and had them canceled, with the sinking fund that had been accumulated for that purpose and an additional $10,000 drawn from the general fund. The payment of these bonds according to the option was a legitimate transaction of which appellants cannot complain.

In 1922 the district issued "Panhandle Independent School District School House

Bonds, series 1922 * * * of the denomination of $1,000.00 each, aggregating $40,000.-00," bearing interest at the rate of 6 per cent. per annum, payable annually. These bonds were payable $10,000 February 1, 1932, 1942, 1952, and 1962, respectively. The interest on these bonds was paid as it matured, and the bonds due February 1, 1932, were paid, leaving a balance of said issue of $30,000.

On September 2, 1932, at the date on which the levy complained of was made, there was legally credited to the sinking fund of the 1922 series $17,290.11. No tax was levied in 1932 for the interest or sinking fund of the 1922 series, and therefore no injury resulted to appellants by reason of the legitimate amount in said sinking fund.

▮ The district in 1927 issued "Panhandle Independent School District School House Bonds, Series 1927," numbered consecutively from 1 to 175, inclusive, dated December 1, 1927, "of the denomination of $1,000.00 each," bearing interest at the rate of 4¾ per cent. per annum, payable semiannually. The principal is payable $4,000 annually to and including December 1, 1952, and $5,000 annually thereafter until the entire issue is discharged. They were issued, according to the order and the recitation in the face of the bonds, "for the purpose of constructing and equipping a public free school building within said district of brick and stone material and constructing permanent repairs of brick and stone material to the public free school buildings of said district." In said order there was levied "a tax of 22¢ on each $100.-00 valuation of taxable property in said district for the year 1928 and the same shall be assessed and collected and applied to the purposes named; and for each of the years 1929 to 1966 inclusive, there is hereby levied and ordered to be levied a tax of 22¢ and so much in addition thereto as may be necessary to pay the interest and the principal maturing on said bond issue." After "constructing and equipping a public free school building within the district of brick and stone material". there remained from the proceeds of the sale of said 1927 issue $10,952.47 for repairs on the "public free school buildings of said district." This sum had been erroneously added to the $17,290.11 sinking fund accumulated for the 1922 series, and caused said fund to appear to be $28,244.58. The sum so erroneously added is still in the depository of the school district, and no claim is made that it has been or will be expended illegally, hence no damage has occurred, but this amount should be carried in a building repair fund.

For a number of years the economical policy of the school district had been to accumulate a surplus to enable it to pay in cash its bonded indebtedness as it matures and the interest thereon as it accrues, as well as to pay in cash the operating expenses without being compelled to borrow money for which it would have been required to pay 8 per cent. interest per annum. The assessed value of the property in the district for 1930 was $8,050,394. and the percentage of delinquencies 6.2 per cent. The assessed value for 1931 was $7,601,995, and the percentage of delinquencies was 15.72 per cent. In 1932 the assessed value was $6,675,870. With this record of diminishing values and increasing delinquencies before it, the school board, on September 2, 1932, made its budget and levied the tax of which complaint is made.

There was outstanding at that time $159,-000 of the 1927 issue of bonds. One bond for the principal sum of $4,000 was due December 1, 1932, together with $3,776.25 semiannual interest on the entire series. On March 1, 1933, semiannual interest amounting to $3,681.25, was due, and on December 1st one bond in the principal sum of $4,000 was due, with the semiannual interest on the entire series, of $3,681.25, aggregating the sum of $19,138.75, revenue for the payment of which had to be provided. On such date there was in the sinking fund to the credit of said issue $7,499.58, and if all of said sum had been applied to the payment of the principal coming due and the interest accruing to December 1, 1933, there would have been a deficit of $11,639.17. The 25 cents on the $100 valuation would have, if collected in full, amounted to $16,689.67. The record is undisputed that the delinquent tax collected and the current tax collected for 1932–33 amounted to $36,614, and the proportion thereof under the levy. available to pay principal and interest on this $159,000 bond issue was $10,768.75.

At the time the tax was levied for 1932, there was in the general fund $32,704.98. The school trustees estimated the operating expenses would amount to $44,552.26. The actual expenses for operating during 1932–33 were $45,415.65. The school was opened about September 1st each year, and the operating expenses were approximately $5,-000 a month. No tax of any consequence was collected until the latter part of January of each year, and out of this surplus was paid the operating expenses accruing before the payment of current taxes. There was due the general fund from the delinquent and current taxes collected for 1932–

33 the sum of $25,845, and at the beginning of the school year 1933–34 the district had a smaller surplus than at the beginning of the year 1932–33.

The order providing for the issuance of these bonds levied a tax of 22 cents on each $100 valuation for the years from 1929 to 1966, inclusive, and directed that so much in addition thereto as was necessary to pay the interest and principal maturing be levied. levied.

These surplus funds were in the depository of the school district, and it paid for the use thereof 4 per cent. interest compounded monthly.

A more detailed statement of the figures involved in this controversy would, in our opinion, be more confusing than enlightening, and we have undertaken only to give the results.

The policy of the board, according to the record, enabled the district to secure better teachers at more economical salaries and save the interest on the money they would have been required to borrow to pay indebtedness and operating expenses.

 The law authorizes the trustees to exercise a judicious discretion for the successful and economical management of the schools. Adams v. Miles et al. (Tex. Com. App.) 35 S.W.(2d) 123, and authorities cited.

That the school trustees acted in good faith and within the limit fixed by law in the levy of the 85 cents on the $100 valuation is not questioned.

"So long as the levying officers keep within the statutory limits, the courts can not inquire into the necessity for the amount of the levy and except in a case of clear abuse of discretion they can not interfere to increase or reduce the amount of the levy, which is within the authority and discretion of the levying officers." 61 C. J. 576, § 707.

"The rate necessary to produce the amount required is largely within the discretion of the levying officers, since it is uncertain what the deficiencies in collection will amount to. But while local authorities have a reasonable discretion in providing in advance for necessary taxes, the courts may interfere if the discretion is abused by raising taxes faster than they are needed. A levy for future needs is invalid as excessive only when so excessive as to show a fraudulent purpose in making the levy." 3 Cooley, Taxation (4th Ed.) 2088, § 1031.

In our opinion the facts wholly fail to show constructive fraud, and the court correctly denied the relief sought.

The judgment is affirmed.