**EL PASO COUNTY HOSPITAL DISTRICT, County of El Paso of the State of Texas, County Judge Charles Mattox, County Commissioners Charles Hooten, Carlos Aguilar, Daniel Haggerty, and Miguel Teran, all as the Governing Board of the El Paso County Hospital District, Appellants,**

v.

**Ray E. GILBERT, Jr., Mario Melgar, Richard Montez, Robert Garcia, and Bill Newkirk, Appellees.**

No. 08–98–00281–CV.

Court of Appeals of Texas, El Paso.

Sept. 16, 1999.

---

Ken Slavin, Brower & Slavin, Jose R. Rodriguez, County Attorney, Edward M. Sosa, Assistant County Attorney, El Paso, for Appellant.

Brunson Moore, John P. Mobbs, Attorney at Law, El Paso, for Appellees.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *O P I N I O N*

ANN CRAWFORD McCLURE, Justice.

Ray E. Gilbert, Jr., Maria Melgar, Richard Montez, Robert Garcia, and Bill Newkirk, tax-paying property owners in El Paso County (Property Owners), brought suit against the County of El Paso (the County) and the members of the El Paso County Commissioners' Court (the Commissioners' Court) seeking injunctive relief pursuant to TEX.TAX CODE ANN. § 26.04(g) (Vernon Supp.1999). Alleging that the defendants failed to comply with the publication requirements of TEX.TAX CODE ANN. § 26.04(e)(2) because the El Paso County Hospital District (Hospital District)[1] did not disclose all required unencumbered fund balances in its "Notice of Effective Tax Rate," the Property Owners sought to prohibit the defendants from adopting or levying 1997 property taxes for the Hospital District. By a subsequent pleading, they additionally sought a declaratory judgment and attorney's fees under the Texas Declaratory Judgment Act. *See* TEX. CIV.PRAC. & REM.CODE ANN. §§ 37.001 *et seq.* (Vernon 1997 and Vernon Supp.1999). Following submission of the case on stipulated facts, the trial court found in favor of the Property Owners. Accordingly, the court below issued a declaratory judgment and permanently enjoined the County and the Commissioners' Court from setting

---

1. Although not initially a party, the Hospital District eventually intervened in the suit.

and adopting future tax rates for the Hospital District without including all unencumbered fund balances in the notice of effective tax rate. The court further awarded attorney's fees to the property owners. We reverse.

## FACTUAL SUMMARY

The Hospital District is a county-wide hospital district created pursuant to Article IX, § 4 of the Texas Constitution and Chapter 281 of the Health and Safety Code to provide medical care to indigent and needy residents of El Paso County.[2] In addition to property taxes and other sources, the Hospital District also receives revenues from Medicaid Disproportionate Share Funds (Dispro Funds) because it serves a disproportionate share of low-income patients. During the fiscal years ended September 30, 1996 and 1997, nine Texas hospitals which serve a disproportionate share of low-income patients were assessed a monthly state tax of 1.25 percent of non-Medicaid patient revenue. In return, all qualifying Texas hospitals, including the Hospital District, received a federally matched distribution of funds under the Disproportionate Share Program. For 1996 and 1997, the Hospital District paid taxes in the amount of $13,429,000 and $11,548,000 respectively, and received Dispro Funds in the net amount of $26,777,000 and $25,949,000 respectively. Receipt of the Dispro Funds has a substantial impact on the Hospital District's financial status. If the Hospital District had not received the Dispro Funds during the indicated years, it would have suffered losses of $664,000 and $2,014,000.

For fiscal year 1997, the Hospital District anticipated receipt of revenues in excess of $165 million, including property taxes in the sum of $32,128,699 and net Dispro revenue of $22,131,444, with total operating expenses budgeted at $143,298,011.[3] If the Dispro Revenue is excluded, total budgeted revenue equals total budgeted expenses for fiscal year 1997. The Hospital District has a policy of segregating Dispro revenue and not investing the funds until the Hospital District, in its discretion, approves projects and expenditures of such funds. Further, the Hospital District allocates and expends all property tax revenues received each fiscal year for maintenance and operations and debt service expenses for that fiscal year.

In Schedule A of the "Notice of Effective Tax Rate" published pursuant to Section 26.04(e), which requires a taxing unit to compute and publish the estimated amount of unencumbered interest and sinking fund balances and maintenance and operations or general fund balances remaining at the end of the current year, the Hospital District did not report the estimated balance of its primary operating account, a general fund which includes Dispro funds and revenues from sources other than property taxes. The Hospital District, relying on guidelines established by the Texas Comptroller, reported only the unencumbered fund balance remaining in the interest and sinking fund (I & S) and maintenance and operations (M & O) property tax accounts. Since the Hospital District expends all property tax revenues it receives each fiscal year for operating and debt service expenses, and no property tax revenues are left in any property tax account at the end of the fiscal year, the Hospital District reported zero ($-0-) as the estimated balances remaining in the I

---

2. TEX. CONST. art. IV, § 4; TEX.HEALTH & SAFETY CODE ANN. § 281.001 et seq. (Vernon 1992 and Vernon Supp.1999). *See also* TEX.HEALTH & SAFETY CODE ANN. § 281.0517 (Vernon Supp.1999)(providing for creation of integrated health care system to be established and operated by El Paso County Hospital District and a medical school).

3. The sources and amount of all revenue, operating and non-operating, budgeted for fiscal year 1997 are as follows: net patient revenues $102,189,582; property taxes $32,128,699; cafeteria revenue $906,892; interest income $1,132,000; non-operating revenue $2,695,713; income/limited investment $4,008,115; and net Dispro revenue $22,131,444.

& S and M & O property tax accounts at the end of fiscal year 1997.

## CONSTRUCTION OF SECTION 26.04(e)

In their second issue on appeal, the County and the Hospital District urge that the trial court misconstrued Section 26.04(e) of the Property Tax Code to require inclusion of all unencumbered funds, including Dispro funds, rather than only unencumbered fund balances remaining in each *ad valorem* property tax account at the end of the fiscal year.[4] We agree.

### The Central Issue on Appeal

Section 26.04(e) provides, in relevant part, that:

(e) By August 7 or as soon thereafter as practicable, the designated officer or employee shall submit the rates to the governing body. He shall deliver by mail to each property owner in the unit or publish in a newspaper *in the form prescribed by the comptroller:*

(1) the effective tax rate, the rollback tax rate, and an explanation of how they were calculated;

(2) *the estimated amount of interest and sinking fund balances and the estimated amount of maintenance and operation or general fund balances remaining at the end of the current fiscal year that are not encumbered with or by corresponding existing debt obligation,* except that for a school district, estimated funds necessary for the operation of the district prior to the receipt of the first state education aid payment in the succeeding school year shall be subtracted from the estimated fund balances. [Emphasis added.]

TEX.TAX CODE ANN. § 26.04(e)(1) & (2).

In accordance with Section 26.04(e)'s directive, the Texas Comptroller of Public Accounts provides to taxing units a detailed and extensive guide for computation of the rates and form for the "Notice of Effective Tax Rate," including the disclosure of these funds in Schedule A. *See* Tex. Comptroller of Pub. Acc'ts, *Truth–in–Taxation Guide: A Guide for Setting Tax Rates,* p. 34 (July 1997)(hereinafter referred to as *Truth–in–Taxation Guide* ). The *Truth–in–Taxation Guide* requires a hospital district to report only the unencumbered funds left in the property tax accounts at the end of the fiscal year. The parties and *amicus curiae* agree that the central issue on appeal is whether the Texas Comptroller has correctly construed Section 26.04(e)(2), or whether as the trial court concluded, the statute requires a taxing unit to report all of its estimated fund balances regardless of the revenue source.

### Rules of Statutory Construction

Several principles guide our inquiry in construing a statute. Our ultimate purpose must be to effect the legislative intent. *Texas Water Comm'n v. Brushy Creek Mun. Utility Dist.,* 917 S.W.2d 19, 21 (Tex.1996); *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994); *Fidelity & Cas. Co. of New York v. Hailes,* 969 S.W.2d 123, 125 (Tex. App.—El Paso 1998, pet. denied). Ordinarily, we resort to rules of construction only when the statute in question is ambiguous. *Texas Water Comm'n,* 917 S.W.2d at 21; *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974); *Hailes,* 969 S.W.2d at 125. Regardless of whether the statute is considered ambiguous on its face, we may consider the administrative construction of the statute. TEX.GOV'T CODE ANN. § 311.023(6) (Vernon 1998). The construction of a statute by an agency charged with its execution is entitled to serious consideration unless the agency's construction is unreasonable and clearly inconsistent with the legislative intent. *Texas Water Comm'n,* 917 S.W.2d at 21; *Tarrant*

---

4. The Court has also considered the *amicus curiae* brief filed by Tarrant County Hospital District in support of the Appellants' position.

*Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *Hailes,* 969 S.W.2d at 125. We give greater deference to an agency interpretation that is long-standing and applied uniformly. *Texas Citrus Exchange v. Sharp,* 955 S.W.2d 164, 170 (Tex.App.— Austin 1997, no writ); *Amarillo Independent School District v. Meno,* 854 S.W.2d 950, 954 n. 6 (Tex.App.—Austin 1993, writ denied); *see also Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 248 (Tex.1991).

■■■■ The County and Hospital District urge us to apply the doctrine of legislative acceptance to the Comptroller's interpretation of Section 26.04(e)(2). According to the doctrine, a statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction. *Sharp,* 815 S.W.2d at 248; *Humble Oil & Refining Co. v. Calvert,* 414 S.W.2d 172, 180 (Tex.1967). The Comptroller is charged with the duty of prescribing the contents of all forms necessary for the administration of the property tax system and furnishing sufficient copies of model forms to local officials. TEX.TAX CODE ANN. § 5.07(a)(Vernon 1992). Section 26.04(e) specifically references this duty by mandating that the taxing unit must utilize the form prescribed by the Comptroller. Prior to 1992, the Comptroller required disclosure of all unencumbered funds. Since 1992, however, the Comptroller has required disclosure of only those unencumbered funds remaining in a taxing unit's property accounts. As noted by the County and Hospital District, the Legislature has not altered Section 26.04(e)(2) despite amendment of Section 26.04(e) in 1993 and 1997. Even so, we decline to apply the doctrine of legislative acceptance to the Comptroller's interpretation of the statute found in the form and in

the *Truth–in–Taxation Guide* because neither has the legal standing of duly-promulgated rules. *See* TEX.ATT'Y GEN.OP. LO–89–59 (1989). We will, however, give serious consideration to the Comptroller's interpretation of Section 26.04(e)(2) if it is reasonable and consistent with legislative intent.

### Analysis of Section 26.04(e)(2)

The property owners argue that the plain and unambiguous language of Section 26.04(e)(2) requires the Hospital District to notify taxpayers of the unencumbered balances in its interest and sinking fund and maintenance and operation or general fund rather than reporting only the balances in its property tax accounts. Contrary to the generic meanings ascribed to these terms by the Property Owners, a review of the pertinent statutes reveals that the terms have specialized meanings in connection with the effective tax rate, the rollback tax rate, and the adopted or actual tax rate. Although the analysis becomes somewhat tedious, as is often the case with tax issues, it is imperative that we review the relevant statutes and their terms in some detail because they illuminate the rationale behind the notice provision in question.

Analysis of Section 26.04(e) necessarily begins with the constitutional amendment requiring adoption of laws to ensure truth-in-taxation with regard to an increase in property taxes. In 1978, the voters of Texas adopted Article VIII, § 21 which prohibits political subdivisions from increasing the total amount of property taxes over the total amount assessed in the preceding year without notice and a public hearing. TEX. CONST. art. VIII, § 21.[5] The provision requires the Legislature to prescribe by law the form, content, timing, and methods of giving the notice and the

---

**5.** Article VIII, § 21(a) provides, in pertinent part, that: "Subject to any exceptions prescribed by general law, the total amount of property taxes imposed by a political subdivision in any year may not exceed the total amount of property taxes imposed by that subdivision in the preceding year unless the governing body of the subdivision gives notice of its intent to consider an increase in taxes and holds a public hearing on the proposed increase before it increases those total taxes."

rules for the conduct of the hearing. *Id.* Pursuant to this constitutional mandate, the Legislature enacted former Article 7244c,[6] the predecessor of chapter 26 of the Property Tax Code. The notice provision at issue in this case, Section 26.04(e)(2), was added in 1981. Acts 1981, 67th Leg., 1st C.S., ch. 13, § 116, 1981 Tex.Gen.Laws 117, 163–64. Although Section 26.04(e) has been amended several times since its adoption, the Legislature has never modified subsection (e)(2).

### Overview of Taxing Unit's Adoption of Ad Valorem Taxes

A taxing unit's effective tax rate and rollback tax rate, calculated each year under the truth-in-taxation requirements of Section 26.04, establish a benchmark for tax increases. *Corpus Christi Taxpayer's Association v. City of Corpus Christi,* 716 S.W.2d 578, 579 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Section 26.04(c) establishes the formulas used by the designated officer or employee of the taxing unit to calculate the effective tax rate and the rollback tax rate. Tex.Tax Code Ann. § 26.04(c). Prior to the adoption of an actual tax rate, and preferably by August 7, a taxing unit is required to publish the effective tax rate, the rollback tax rate, and an explanation of how the calculations used to obtain both rates were made. Tex.Tax Code Ann. § 26.04(e)(1); *Corpus Christi Taxpayer's Association,* 716 S.W.2d at 579. In addition to the unencumbered fund balances at issue in this case, it must also publish a schedule of the unit's debt obligations showing the amount of principal and interest that will be paid to service the unit's debts in the next year from property tax revenues, the amount by which taxes imposed for debt are to be increased because of the unit's anticipated collection rate, and the total of these two amounts less excess collections from the preceding year. Tex.Tax Code Ann. § 26.04(e)(2), (3).[7] Before September 1 or as soon thereafter as practicable, the governing body of each taxing unit must adopt a tax rate for the current year. The governing body may not adopt a tax rate that exceeds the lower of the rollback tax rate or 103 percent of the effective tax rate until it has held a public hearing on the proposed increase in compliance with Section 26.06. Tex.Tax Code Ann. §§ 26.05(d).[8] If the adopted rate exceeds the rollback tax rate, voters may petition for an election to reduce the adopted rate to the rollback tax rate. Tex.Tax Code Ann. § 26.07.

### The Effective Tax Rate

The effective tax rate is expressed in dollars per $100 of taxable value and is calculated by dividing last year's adjusted taxes (after subtracting taxes on lost property) by this year's adjusted tax base (after subtracting the value of new property). *Truth–in–Taxation Guide,* at p. 34.[9] Thus, the effective tax rate, used for com-

---

**6.** Acts 1978, 65th Leg., 2nd C.S., ch. 8, 1978 Tex.Gen.Laws 18. For convenience, we will cite to Article 7244c rather than the session law cite. Article 7244c was codified as Chapter 26 of the Property Tax Code in 1979. Acts 1979, 66th Leg., R.S., ch. 841, § 1, sec. 26.01 *et seq.,* 1979 Tex.Gen.Laws 2217, 2276–83.

**7.** The taxpayers must also be notified of other information not relevant to the issues before us. Tex.Tax Code Ann. § 26.04(e)(4), (5), (6).

**8.** Effective January 1, 1998, Section 26.05(d) was amended to provide that the governing body may not adopt a tax rate that, if applied to the total taxable value, would impose an amount of taxes that exceeds last year's levy until it has held a public hearing on the proposed tax rate and has otherwise complied with Section 26.06. Tex.Tax Code Ann. § 26.05(d). Because this case concerns adoption of the tax rate for 1997–98, the amended statute is inapplicable.

**9.** The formula for the effective tax rate is stated in Tex.Tax Code Ann. § 26.04(c)(1) as:

*(LAST YEAR'S LEVY—LOST PROPERTY LEVY)*
(CURRENT TOTAL VALUE—NEW PROPERTY VALUE)

The terms found in the formula are defined in the Property Tax Code. *See* Tex.Tax Code Ann. § 26.012(6), (13), (15), (17).

parison only, shows the relationship between the prior year's tax revenue and the current year's values. *Truth–in–Taxation Guide,* Part 1. It enables the public to evaluate the relationship between taxes for the preceding year and current taxes that a proposed tax rate would produce if applied to the same properties. *Truth–in–Taxation Guide,* Part 2.

### The Rollback Tax Rate

The rollback tax rate is that rate which exceeds the effective tax rate by 8 percent. *Vinson v. Burgess,* 773 S.W.2d 263, 264 n. 1 (Tex.1989). It is expressed in dollars per $100 of taxable value and is calculated by multiplying the taxing unit's effective maintenance and operations rate (referred to as the effective operating rate by the Comptroller) by 1.08 and then adding this figure to the unit's current debt rate. TEX. TAX CODE ANN. § 26.04(c)(1); *Truth–in–Taxation Guide,* at p. 34. As stated on the Comptroller's form, the effective operating rate is calculated by dividing last year's adjusted operating taxes (after subtracting taxes on lost property and adjusting for transferred function) by this year's adjusted tax base. *Truth–in–Taxation Guide,* at p. 34; *see* TEX.TAX CODE ANN. § 26.012(9) (formula for effective operating rate). The debt rate is the total current debt (adjusted for collections) divided by total taxable value. *Truth–in–Taxation Guide,* at pp. 31–32; *see* TEX.TAX CODE ANN. § 26.012(4)(formula for debt rate). When discussing the debt rate, we must bear in mind that the term "debt" has a specialized meaning in connection with Chapter 26 of the Property Tax Code. It means "a bond, warrant, certificate of obligation, or other evidence of indebtedness owed by a taxing unit that is *payable solely from property taxes* in installments over a period of more than one year, *not*

*budgeted for payment from maintenance and operations funds,* and secured by a pledge of property taxes, or a payment made under contract to secure indebtedness of a similar nature issued by another political subdivision on behalf of the taxing unit." [Emphasis added.] TEX.TAX CODE ANN. § 26.012(7); *see also* TEX. CONST. art. XI, § 7 (prohibiting city or county from incurring a debt unless provision is made for levying and collecting a sufficient tax to pay the interest thereon and to provide at least 2 percent (2%) as a sinking fund to pay the principle).[10]

### The Adopted Tax Rate

Finally, the actual or adopted tax rate consists of two components, each of which must be approved separately by the governing body: (1) the debt rate, which generates the tax revenue needed to pay principal and interest on certain debts in the coming year, and (2) the maintenance and operation rate, which generates the remaining taxes needed for current operations. TEX.TAX CODE ANN. § 26.05; *Corpus Christi Taxpayer's Association,* 716 S.W.2d at 579. For purposes of the Property Tax Code, "maintenance and operations" means any lawful purpose other than debt service for which a taxing unit may spend property tax revenues. TEX. TAX CODE ANN. § 26.012(16).

### Conclusion

■ By requiring a taxing unit to disclose only the balances remaining in the unit's property tax accounts, the Comptroller has determined that Section 26.04(e)(2) requires a taxing unit to give the public notice of the estimated amount of unencumbered tax revenues remaining on hand at the end of the fiscal year. We believe the Comptroller's interpretation is reasonable because the information required

10. "Debt," as used in Article XI, § 7 means any pecuniary obligation imposed by contract. *McNeill v. City of Waco,* 89 Tex. 83, 33 S.W. 322, 324 (1895); *City–County Solid Waste Control Bd. v. Capital City Leasing, Inc.,* 813 S.W.2d 705, 707 (Tex.App.—Austin 1991,

writ denied). A contract does not create a "debt," however, if the parties lawfully and reasonably contemplate that the obligation will be satisfied out of current revenues or out of some fund then within the immediate control of the governing body. *Id.*

bears a logical relationship to the computation of the various tax rates. This interpretation is also consistent with the legislative intent.

█ As seen from our discussion regarding the governing body's computation of the effective tax rate and rollback tax rate, as well its adoption of the actual tax rate, *ad valorem* tax revenues are generated for two enumerated purposes—payment of debt service and payment of maintenance and operation expenses. In calling for the balance of the interest and sinking fund, i.e., the debt service fund, and the maintenance and operation or general fund, it follows that the Legislature intended for the taxpayer to be notified of the remaining amount of tax revenues rather than the taxing unit's total amount of funds on hand at the end of the fiscal year.

The Hospital District's I & S property tax account contains the tax revenues generated in the prior year for the purpose of paying the interest and principle on long-term debts secured by tax revenues. As a general rule, the governing body may not apply tax revenues generated by the rate adopted pursuant to Section 26.05(a)(1) for any purpose other than the retirement of debt. TEX.TAX CODE ANN. § 26.05(f). The Hospital District estimated that it would have no unencumbered funds remaining in this account at the end of the fiscal year. This information is significant to the debt service information found in Schedule B, and consequently, to the calculation of the total debt levy, the current debt rate, the effective maintenance and operations rate, and the rollback rate. Assuming the Hospital District has other interest and sinking funds not derived from tax revenues,

they are irrelevant to these calculations.[11] Similarly, the Hospital District's M & O property tax account contains the tax revenues generated during the previous year for the purpose of paying a corresponding portion of the preceding year's operating expenses. The Hospital District's disclosure that all M & O tax revenues would be expended be the end of the fiscal year is relevant to the maintenance and operation rate adopted by the governing body.

This interpretation of Section 26.04(e)(2) is consistent with the stated purpose of the constitutional amendment from which the truth-in-taxation laws are derived as well as the legislative intent behind Section 26.04. The goal of Article VIII, § 21 is to prohibit a taxing unit from increasing the total amount of property taxes over the total amount assessed in the preceding year without notice and a public hearing. In keeping with this purpose, Section 26.04 requires a taxing unit to provide the taxpayer with notice regarding the manner in which the effective tax rate and the rollback tax rate are computed and how they relate to the prior year's taxes. A taxing unit's financial status, whether positive or negative, and the amount of non-tax revenue funds the unit may have on hand bears no relationship to the computation of these rates. This is certainly information which a concerned taxpayer may wish to obtain through other means[12] and raise for debate at any subsequent hearing, but it is not required by Section 26.04(e)(2).

For all of these reasons, we conclude that Section 26.04(e)(2) does not require a taxing unit to disclose in the "Notice of Effective Tax Rate" all unencumbered fund balances but rather only the balances in the property tax funds or accounts. Issue Two is sustained.[13] The declaratory

---

11. The Hospital District notes that its assets and liabilities, financial statements, and operational decisions are matters of public record and available to the public through other means. *See* TEX.HEALTH & SAFETY CODE ANN. §§ 281.073(a), 281.091, 281.092 (Vernon 1992).

12. As noted by the Appellants, information regarding the Hospital District's financial status and operational decisions are available to the public. *See* TEX.HEALTH & SAFETY CODE ANN. §§ 281.073(a), 281.091, 281.092 (Vernon 1992).

13. Given our disposition of this issue, it is unnecessary to address the first issue for review.

judgment and writ of injunction are re-versed.