Ray E. GILBERT, Jr., Mario Melgar, Richard Montez and Bill Newkirk, Petitioners,

v.

El PASO COUNTY HOSPITAL DIS- TRICT, County of El Paso, and Charles W. "Chuck" Mattox, Charles Hooten, Carlos Aguilar, Daniel Hag- gerty, and Miguel Teran as the gov- erning board of El Paso County Hos- pital District, Respondents.

No. 99–1100.

Supreme Court of Texas.

Argued Sept. 6, 2000.

Delivered Jan. 18, 2001.

Brunson D. Moore, John P. Mobbs, El Paso, for Petitioner.

Edward M. Sosa, Ken Slavin, Brower & Slavin, El Paso, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

The Texas Constitution and the Texas Tax Code contain truth-in-taxation provisions that require local government units to tell their taxpayers each year how the next year's property tax rates will compare with the current year's. *See* TEX. CONST. art. VIII, § 21; TEX.TAX CODE § 26.04. As part of this taxpayer notice, taxing units must show how much money, if any, they estimate that they will have left over from previous years' maintenance and operations and debt service funds. *See* TEX.TAX CODE § 26.04(e)(2). We must decide whether this disclosure requirement covers only property taxes left over in these funds, or whether it also covers revenues accumulated from other sources.

The El Paso Hospital District pays its operating expenses from several kinds of revenue, including patient fees, cafeteria charges, property taxes, and the federal Medicaid program. The District reads the truth-in-taxation statute to require that its notice show only the District's estimate of its remaining property taxes, even if other non-tax funds are also available for maintenance and operations. Gilbert and other taxpayers sued the District, contending that the statute requires the District to show the full amount of its unspent funds from all sources.

The trial court rendered judgment for the taxpayers, but the court of appeals reversed, holding that the Tax Code does not require the District to disclose balances made up of non-tax revenues. 4 S.W.3d 66, 73. We disagree, reverse the

court of appeals' judgment, and remand the case to the court of appeals.

# I

## Background

The El Paso Hospital District operates R.E. Thomason General Hospital in El Paso. Constitutionally and by statute, the District has "full responsibility for furnishing medical and hospital care for indigent and needy persons residing in the district." TEX.HEALTH & SAFETY CODE § 281.046; *see also* TEX. CONST. art. IX, § 4. To discharge this responsibility and to perform its other functions, the District is authorized to assess a tax on property in the District. *See* TEX. CONST. art. IX, § 4. In addition to property taxes, the District receives money from paying patients, its cafeteria, and Medicaid.

The District participates in the Medicaid Disproportionate Share Program, which provides extra revenue to hospitals that serve a high proportion of indigent patients. *See* 1 TEX.ADMIN.CODE § 355.8065(a). This revenue is significant to the District; in 1997, the District received almost as much in Disproportionate Share ("Dispro") Funds as it received in property taxes.[1] The District must use Dispro revenues to serve poor patients, but the parties agree that this requirement is the only relevant limit on the District's use of Dispro money.

The District's policy is to spend Dispro money last. It budgets its operating expenses to equal its other revenues, and segregates its Dispro funds to pay for special projects such as community outreach and capital improvements. As a result, even though the District had by 1997 accumulated about $73 million in unspent Dispro money, its records showed each year that the District's operating expenses had exhausted its property tax revenue.

To comply with the truth-in-taxation requirements, the District each year publishes a "Notice of Effective Tax Rate" in the local newspaper. *See* TEX.TAX CODE § 26.04(e). The statute requires the District to include in this notice "the estimated amount of interest and sinking fund balances and the estimated amount of maintenance and operation or general fund balances remaining at the end of the current fiscal year that are not encumbered with or by corresponding existing debt obligation." *Id.* § 26.04(e)(2). Relying on its interpretation of the Texas Comptroller's "Truth–in–Taxation Guide," the District reported in 1997 only the property tax revenue remaining in these funds. Because it budgets to spend all its non-Dispro revenue each year, the District reported its estimated fund balance as $0. A group of taxpayers sued to contest the District's 1997 notice under Texas Tax Code § 26.04(g), which authorizes a court to enjoin a taxing unit's adoption of a tax rate if the unit has not made a good-faith effort to comply with the truth-in-taxation requirements. They also sought declaratory relief and attorney's fees under the Declaratory Judgments Act. *See* TEX.CIV. PRAC. & REM.CODE §§ 37.004, 37.009.

The trial court ruled that Section 26.04(e)(2) required the District's truth-in-taxation notice to show all the money remaining at the fiscal year's end, regardless of the source. Another trial court had reached a similar conclusion in 1996 in a suit these same taxpayers had brought against El Paso County.[2] The County did not appeal that judgment because it believed the case to be moot. But that judgment led the trial court here to conclude that the District's failure to follow the Tax

---

1. For fiscal year 1997, the District received $26 million in Dispro funds and $33 million in property taxes. Its largest single revenue source for that year was $100 million from patient fees.

2. Although the El Paso Hospital District is distinct from El Paso County, the County Commissioner's Court appoints the District board and sets tax rates for the District. *See* TEX.HEALTH & SAFETY CODE §§ 281.021, 281.121.

Code was not in good faith. The court enjoined the District's adopting a tax rate in future years unless it published the full unencumbered balances, regardless of source, in its interest and sinking fund and in its maintenance and operations fund.[3] The trial court also awarded the taxpayers attorney's fees under the Declaratory Judgments Act.

The court of appeals reversed the trial court's judgment, holding that the Tax Code requires publication only of fund balances derived from property taxes. 4 S.W.3d at 73. We granted review to resolve this question of statutory interpretation.

## II

### The Truth–in–Taxation Scheme

A taxing unit's annual truth-in-taxation notice allows its taxpayers to compare the unit's proposal for one year's taxes with the prior year's taxes. *See* TEX. CONST. art. VIII, § 21. Before adopting a tax rate for the fiscal year, a taxing unit must report to its taxpayers its "effective tax rate" and its "rollback tax rate." *See* TEX.TAX CODE §§ 26.04(e)(1), (g). In the same notice publishing these two rates, the taxing unit must show the fund balances at issue in this case. *See id.* § 26.04(e)(2).

The formula for the effective tax rate considers only properties that remain on the tax roll from the previous fiscal year. This rate shows how the taxing unit would collect the same amount of overall revenue from these properties in the current fiscal year as it collected in the previous year. *See id.* § 26.04(c)(1). The calculation of the rollback tax rate treats taxes for debt and non-debt purposes separately. By imposing the rollback tax rate, the taxing unit would meet its debt service obligations for the fiscal year and also raise its levy for non-debt expenses by 8% over the

previous year's non-debt total. *See id.* § 26.04(c)(2). Changes in taxable property values and in the taxing unit's debts from one year to the next dictate the mathematical relationship among the effective tax rate, the rollback tax rate, and the taxing unit's actual rate for the previous year.

The Tax Code authorizes the taxing unit to adopt a rate for each fiscal year that is high enough to pay its debts and to meet its maintenance and operation needs. *See id.* § 26.05(a). Depending on the unit's debts, service plans, and accumulated surplus or deficit, this rate may be lower than, higher than, or equal to the previous year's rate. *See Texas Co. v. Panhandle Indep. Sch. Dist.*, 72 S.W.2d 957, 959 (Tex.Civ.App.—Amarillo 1934, writ ref'd) (holding overall tax levy, within statutory limits, to be a discretionary matter for the taxing authority). If the unit wishes to adopt a rate higher than either the effective tax rate or the rollback tax rate, however, the taxing unit must hold a public hearing before adopting it. *See* TEX.TAX CODE § 26.05(d). Moreover, in a special election after the taxing unit has adopted the annual tax rate, voters can cut taxes back to the rollback tax rate, perhaps forcing the taxing unit to alter its plans. *See id.* § 26.07; *Vinson v. Burgess*, 773 S.W.2d 263 (Tex.1989).

The truth-in-taxation statute does not, by itself, limit a governmental unit's power to levy taxes. *But see, e.g.,* TEX. CONST. art. IX, § 4 (limiting hospital district tax rates to $0.75 tax per $100 assessed value). Instead, the truth-in-taxation scheme focuses on giving taxpayers information. If the taxing unit proposes to increase taxes above either the effective tax rate or the rollback tax rate, the taxpayers can apply these rates and the pro-

---

**3.** By the time of trial, the District had already adopted its 1997 tax rate. The trial court held that the case was not moot, however, because the District would have to follow the same procedure and timetable in future years.

*Cf. Blum v. Lanier,* 997 S.W.2d 259, 264 (Tex. 1999) (holding that a challenge to ballot language was not moot, even though the election was over, where the city would resubmit the proposition to the voters).

posed rate to their taxable property values to compare the burdens the rates would impose. They can also examine the taxing unit's reported fund balances to evaluate the unit's need for additional money.

## III

### Publication of Fund Balances

The court of appeals held that Tax Code Section 26.04(e)(2) requires disclosure only of those remaining fund balances derived from property taxes. It based this holding on the terms and definitions in the Tax Code, *see* 4 S.W.3d at 70–72, and on its understanding of the purpose behind the truth-in-taxation requirements, *see id.* at 72–73. We conduct a similar analysis, but conclude, as the trial court did, that the statute requires a taxing unit to report all of its estimated unencumbered fund balances regardless of the revenue source.

### A

### The Statutory Language

■ Our essential task in interpreting this statute is to carry out the Legislature's intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). In doing so, we look first to the statute's language. *Smith v. Clary Corp.,* 917 S.W.2d 796, 799 (Tex.1996). The statute requires the District to disclose

> the estimated amount of interest and sinking fund balances and the estimated amount of maintenance and operation or general fund balances remaining at the end of the current fiscal year that are not encumbered with or by corresponding existing debt obligation.

Tex.Tax Code § 26.04(e)(2). The statutory language does not itself limit the taxing unit's disclosure to fund balances derived from property tax revenues, as the Legislature could easily have done had it so intended. Nevertheless, the court of appeals reviewed the "specialized meanings" of these terms elsewhere in the statute and concluded that the rationale behind

the notice provision requires the taxing unit to disclose only balances remaining in its property tax accounts. We disagree.

■ The Tax Code does not limit expenditures for maintenance and operations to property tax revenues, as it does with the payment of debts. *See* Tex.Tax Code § 26.012(7) (defining "debt" as "indebtedness owed by a taxing unit that is solely payable from property taxes"). The Code's definition of "maintenance and operations" is in fact quite general: "any lawful purpose other than debt service for which a taxing unit may spend property tax revenues." *Id.* § 26.012(16). Under this definition, property tax revenues may go into a maintenance and operations fund, but so may revenues from other sources that are available for general purposes. Thus, the statutory definition of maintenance and operations does not suggest that the taxing authority's disclosure should be limited to property tax revenues.

■ In addition, the Tax Code uses the terms "maintenance and operations fund" and "general fund" interchangeably, as do the parties. *See* Tex.Tax Code § 26.04(e)(2). The Tax Code does not define "general fund"; therefore, we must give the term its commonly accepted meaning. *See Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 865 (Tex.1999). A general fund, by its plain meaning, is not limited to revenue from a specific source. Because the statute does not exclude specific sources of revenue from the "maintenance and operations" fund, we conclude that it also does not exclude monies derived from specific sources from disclosure in the fund's overall balance.

We believe that the most reasonable construction of the Section 26.04(e)(2) notice requirement is that taxing units must report their entire unencumbered maintenance and operations and general fund balances, including money received from sources other than property taxes. This interpretation comports with the Legisla-

ture's evident purpose in enacting the statute.

## B

### The Statutory Purpose

The underlying purpose of the truth-in-taxation notice is to help taxpayers evaluate a tax increase proposal. *See* TEX. CONST. art. VIII, § 21. To do so, taxpayers need to know how the proposal will affect them; the effective tax rate and rollback tax rate help them compare next year's potential tax burden to this year's. *See* TEX.TAX CODE § 26.04(e)(5). The court of appeals noted correctly that total fund balances are irrelevant to computing the effective tax rate and rollback tax rate, but it failed then to consider why the statute requires balances at all. *See* 4 S.W.3d at 73.

■ To evaluate a tax increase proposal, taxpayers need to know whether the current year's revenues, including the tax levy, were more or less than the taxing unit needed to meet its debts and provide its services. *See* TEX.TAX CODE § 26.04(e). If a taxing unit has leftover money available for maintenance and operations, as the District acknowledges that it has, that surplus may be of interest to taxpayers in evaluating the taxing unit's financial condition regardless of whether the surplus came from property taxes or from some other source. By allowing the District to report only leftover property taxes, of which it has none, the court of appeals' holding thwarts the purpose of the truth-in-taxation notice.

Because its policy is to spend Dispro funds last, the District shows no surplus on its Section 26.04(e) notice. Aside from this discretionary policy, though, the only relevant restriction on the District's use of Dispro funds is that it must use those funds to provide medical care to poor people. This care is the District's primary function, and in fact the Constitution authorizes the District to collect property taxes only if it "assume[s] full responsibility for providing medical and hospital care to needy inhabitants of the county." TEX. CONST. art. IX, § 4; *see also* TEX.HEALTH & SAFETY CODE § 281.002.

■ We must assume that the Legislature intended the truth-in-taxation disclosure to have some meaning to taxpayers who read it. *See Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex. 1981). On the record before us, the District could have chosen to spend Dispro funds before taxes to care for El Paso County residents who cannot pay. If it had, any reserve the District maintained would include some unspent property taxes, and the court of appeals' interpretation of Section 26.04(e)(2) would require the District to show some remaining fund balance on its truth-in-taxation notice. We do not believe that the Legislature meant the content of a taxing unit's truth-in-taxation notice to vary depending on the unit's discretionary choice among accounting methods.

The District makes two arguments for the proposition that its notice fulfills its taxpayers' information needs. First, it argues that taxpayers already have more than enough information, because its annual financial reports are matters of public record. *See* TEX.HEALTH & SAFETY CODE § 281.092. But this case is not about the District's public financial statements; certainly, a taxpayer could gain more complete information by studying the District's books. Rather, the truth-in-taxation statute reflects the Legislature's determination that taxpayers should not have to work that hard to get the information that the statute covers.

Alternatively, the District argues that taxpayers could be confused or even misled if they saw that the District had by 1997 accumulated unspent funds that totaled more than twice as much as the property taxes the District collected in that year. But the effect of the truth-in-taxation notice is a policy matter for the Legislature's consideration; therefore, we

take the argument to be that the Legislature could not have intended to confuse or mislead voters with disclosures meant to enlighten them. Given the District's stipulation that it could have used Dispro funds for any maintenance or operations purpose consistent with its mission, though, we think that the Legislature could have concluded that including these funds in the District's maintenance and operations balance disclosure would not misinform taxpayers. Moreover, nothing in Section 26.04(e)(2) prevents the District from explaining to taxpayers why it has accumulated the surplus, what it plans to do with the money, and why it nevertheless needs property taxes.

Finally, the District and *amicus curiae,* the Tarrant County Hospital District, suggest that Dispro funds deserve special treatment under Section 26.04(e)(2), because hospitals are ineligible for Dispro funds if they use them to reduce local revenues. *See* 1 Tex.Admin.Code § 355.8065(c)(8). They argue that if taxpayers read the notice, see the large amounts of leftover money, and vote for a tax rollback, the District will lose its Dispro funds. To avoid reducing local revenues, and to protect the District's ability to provide health care for poor people, their reporting method keeps Dispro funds separate from property taxes.

While the District's concerns over protecting its Dispro funds and ensuring proper indigent health care are commendable, its arguments raise policy issues that only the Legislature can resolve. We understand the argument here to be that the Legislature would not have intended its disclosure requirements to jeopardize funds for indigent medical care. But the District's uses of Dispro funds for indigent care are for maintenance and operations purposes, and a rollback election does not reduce local maintenance and operations revenue. Rather, a rollback election refuses to raise such revenue as far as the taxing unit's governing body proposes. *See* Tex.Tax Code § 26.04(c)(2) (defining

rollback tax rate); *id.* § 26.07 (allowing voters to reduce the annual tax rate to the rollback tax rate if the taxing unit has adopted a rate higher than the rollback tax rate). Furthermore, given that the District's full financial statements are available to the public, the risk already exists that its accumulation of Dispro funds will provoke a tax rollback. The truth-in-taxation rules may increase that risk, but we are not persuaded that the danger is so great that the Legislature, assuming that it intended to maximize the use of Dispro funds for indigent care, could not have intended to require full disclosure.

## C

### The Comptroller's Form

Taxing units must provide their truth-in-taxation notices "in the form prescribed by the comptroller." Tex.Tax Code § 26.04(e); *see also id.* § 5.07. Every year, the comptroller provides these forms as part of a "Truth in Taxation Guide" that explains taxing units' truth-in-taxation obligations and highlights changes in the law. The District believes that the Comptroller's form authorizes the District's reporting method. It urges us to hold that, by amending Section 26.04 since the Comptroller published the form, the Legislature has accepted the administrative interpretation of the Tax Code suggested by the form. For two reasons, we cannot.

First, the administrative construction of a statute must be clear before we will read that construction into the Legislature's reenactment of the statute. *See Fleming Foods of Texas v. Rylander,* 6 S.W.3d 278, 282 (Tex.1999); *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 248 (Tex.1991). Here, the meaning of the Comptroller's form is not clear. The part of the form in question has two columns, one headed "Type of Property Tax Fund" and the other "Balance." Although the District believes that these headings require disclosure only of balances composed exclusively

of property taxes, we do not read them so narrowly.

The Constitution lists four uses to which cities and counties may put property taxes. *See* TEX. CONST. art. VIII, § 9(b); *see also id.* art. IX, § 9 (requiring county hospital districts to use their tax revenues to care for needy county inhabitants). But taxing units routinely supplement the tax dollars they spend on these functions with non-tax revenue. The District, for example, spends both patient fees and tax receipts on maintenance and operations. The Comptroller's form does not compel the conclusion that a "Property Tax Fund" must contain exclusively property taxes. Instead, we find it more likely that a "Property Tax Fund" is one that may include property taxes, rather than one that may not, and that the Comptroller meant the form to ask whether any balance remains in such funds.

Second, we will not deem the Legislature to have accepted even a clear administrative construction that conflicts with a statute's plain language or clear purpose. *See Fleming Foods,* 6 S.W.3d at 282; *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993). Although Section 26.04(e) does require the Comptroller to create forms for taxing units to use in their truth-in-taxation disclosures, the statute does not authorize the Comptroller to change the substance of those disclosures. *See* TEX.TAX CODE §§ 5.07, 26.04(e). As discussed above, we believe that the District's interpretation of Section 26.04 conflicts with the Legislature's evident purpose in enacting this section.

### IV

### Conclusion

We hold that the District's publication of its unencumbered fund balances did not meet the requirements of Tax Code Section 26.04(e)(2). Accordingly, we reverse the court of appeals' judgment. Because it concluded that the District had followed the Tax Code, the court of appeals did not address the District's other challenges to the declaratory judgment, the attorney's fees, and the trial court's finding that the District had acted in bad faith. We therefore remand the case to the court of appeals for consideration of the District's remaining issues.