

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

February 5, 2026

The Honorable Matthew A. Mills
Hood County Attorney
1200 West Pearl Street
Granbury, Texas 76048

**Opinion No. KP-0515**

Re: Interpretation and application of certain provisions in Tax Code chapter 26 and Special District Local Laws Code chapter 1042 to a hospital district (RQ-0593-KP)

Dear Mr. Mills:

You ask about Hood County Hospital District's statutory authority in relation to a Tax Code requirement.[1] You tell us that, under the Special District Local Laws Code, the District is charged with providing indigent care and is authorized to impose an ad valorem tax. Request Letter at 1. You say that "[o]n December 31, 1996, the" District entered into a lease that transferred control of certain District facilities to another entity "in exchange for an up-front payment to the District." *Id.* "After that time, the District did not impose ad valorem taxes, and it used the lease money to provide indigent care." *Id.* But "the [lease] money is nearly out" so, in 2024, the District set an ad valorem tax rate above zero and called an election to obtain voter approval on the new rate.[2] *Id.* at 1–2. You explain the District called the election because of a requirement in the Tax Code. *Id.* at 2. "However, the measure was defeated, leaving the District" with an ad valorem tax rate of zero and "limited options before running out of money in about a year." *Id.*

Against that backdrop, you suggest "tension" exists between the Special District Laws Code and the Tax Code as to the imposition of ad valorem taxes. *Id.* at 1. You first ask which statute controls—the District's authority to impose a tax under the Special District Laws Code or the Tax Code's requirement to "secure voter approval before raising ad valorem taxes above a certain rate." *Id.* at 2. If "the Tax Code controls," you next ask whether the "responsibilities of the District" fall on Hood County. *Id.*

---

[1] *See* Letter from Hon. Matthew A. Mills, Hood Cnty. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 2 (Apr. 3, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0593KP.pdf ("Request Letter").

[2] Information on its website indicates the District set the tax rate at $0.02 per $100 valuation. *See* HOOD CNTY., HOOD COUNTY HOSPITAL DISTRICT BOARD PROPOSED TAX INCREASE INFORMATION PACKET (Sept. 25, 2024), https://hoodcountytx.documents-on-demand.com/document/cc471798-477b-ef11-a41f-000c29a59557/Hood%20County%20Hospital%20District%20QA%2009.25.2024%20QA%20v5 (on file with the Op. Comm.).

**The District's board of directors shall impose a tax on property in the District at a rate not to exceed seventy-five cents on each $100 valuation.**

We begin with some general information about the District and its authority to impose a property tax. The Legislature created the District under its authority to "creat[e], establish[], maint[ain] and operat[e] . . . hospital districts" in article IX, section 9 of the Texas Constitution. TEX. CONST. art. IX, § 9; *see* TEX. SPEC. DIST. CODE § 1042.002. The District's enabling legislation is codified at Chapter 1042 of the Special District Local Laws Code. *See* TEX. SPEC. DIST. CODE §§ 1042.001–.253. Pursuant to Chapter 1042, a board of directors manages and controls the District, *id.* §§ 1042.001, .103, which is charged with the responsibility of providing medical and hospital care for the District's needy inhabitants, *id.* § 1042.101. To help carry out this and its other functions, "[t]he board shall impose a tax on all property in the district subject to district taxation," *id.* § 1042.251(a), "at a rate not to exceed [seventy-five] cents on each $100 valuation," *id.* § 1042.252. *Cf. Gilbert v. El Paso Cnty. Hosp. Dist.*, 38 S.W.3d 85, 87 (Tex. 2001) (stating that a different hospital district was authorized to assess a property tax to discharge its responsibility to furnish care for the indigent and needy and perform other functions).

**The Tax Code gives voters a method to limit a tax rate increase to the extent it exceeds the voter-approval tax rate.**

We next consider the Tax Code requirement at issue. You tell us the Tax Code requires "taxing entities to secure voter approval before raising ad valorem taxes above a certain rate." Request Letter at 2. We understand you to refer to section 26.07 of the Tax Code, a truth-in-taxation provision. *See id.*; Tex. Att'y Gen. Op. No. KP-0444 (2023) at 8. *See generally* TEX. TAX CODE § 26.07.

Section 26.07 provides that "[i]f the governing body of a special taxing unit . . . adopts a tax rate that exceeds the taxing unit's voter-approval tax rate, . . . the registered voters of the taxing unit at an election held for that purpose must determine whether to approve the adopted tax rate." TEX. TAX CODE § 26.07(b). A "special taxing unit" includes a hospital district. *Id.* § 26.012(19)(C). If the voters do not approve the proposition, the "tax rate for the current tax year is the taxing unit's voter-approval tax rate." *Id.* § 26.07(e); *see also id.* § 26.04(c) (prescribing how to calculate the "voter-approval tax rate").

This means that raising a previously approved tax rate from zero requires a voter approval election, and rejection of that proposed increase leaves the "rate for the current tax year [at] the taxing unit's voter-approval tax rate," *id.* § 26.07(b), (e); *see also* Tex. Att'y Gen. Op. No. GA-1070 (2014) at 2 (referencing what was previously called the rollback rate)—i.e., the original zero. We understand this is the situation the District faces.[3] *See* Request Letter at 1.

---

[3] Information on the District's website indicates that, in 2024, the District calculated its voter-approval tax rate to be zero. *See* HOOD CNTY., HOOD COUNTY HOSPITAL DISTRICT NOTICE OF PUBLIC HEARING ON TAX INCREASE, https://hoodcad.net/wp-content/uploads/2024/08/Hospital-District-Notice-of-tax-rate.pdf (last visited Sept. 5, 2025) (on file with the Op. Comm.).

**The District's authority to impose a tax does not conflict with the voters' ability to limit a tax-rate increase.**

Your first question asks whether the Special District Local Laws Code or the Tax Code controls—suggesting the two codes are in conflict. *See id.* at 1–2. "When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). "Two statutes irreconcilably conflict when only one of them can apply to a particular situation." *Love v. State*, 706 S.W.3d 584, 609 (Tex. App.—Austin 2024, pet. ref'd) (quoting *Lomax v. State*, 233 S.W.3d 302, 312 (Tex. Crim. App. 2007)). In situations where a conflict exists, one statute may prevail over another. *See, e.g.*, TEX. GOV'T CODE §§ 311.025(a), .026(b). But we "read statutes to avoid conflict and superfluities if possible." *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 432 (Tex. 2002). We determine if a conflict exists by focusing first on the enacted language. *See Combs*, 422 S.W.3d at 635.

You correctly observe that both the District's enabling legislation and Tax Code section 26.07 concern the District's tax rate. *See* Request Letter at 1–2. The provisions differ, however, in purpose and application. Sections 1042.251 and 1042.252 of the Special District Local Laws Code are special laws that command the board of directors to adopt a tax rate within a permissible range—that is, "a rate not to exceed [seventy-five] cents on each $100 valuation." TEX. SPEC. DIST. CODE §§ 1042.251–.252. By comparison, section 26.07 is a general statute which affords voters the opportunity to limit tax increases through disapproval of rates above those previously approved. TEX. TAX CODE § 26.07(e); Tex. Att'y Gen. Op. No. KP-0444 (2023) at 8; *see also, e.g.*, *Vinson v. Burgess*, 773 S.W.2d 263, 264 n.1 (Tex. 1989) (using the "rollback tax rate" terminology). Thus, sections 1042.251 and 1042.252 authorize the District's board of directors to impose a tax within an enumerated range of rates and section 26.07 permits voters to limit the extent of a tax-rate increase. *Compare* TEX. SPEC. DIST. CODE §§ 1042.251, .252, *with* TEX. TAX CODE § 26.07(e).

Even were we to assume that a zero percent tax rate is within the prescribed statutory range of rates which the board may impose,[4] Tax Code section 26.07 simply authorizes voters to refuse to raise property taxes "as far as the taxing unit's governing body proposes." *Gilbert*, 38 S.W.3d at 91. Section 26.07 does not itself prohibit the board from imposing a rate within the permissible range of tax rates. *Cf. id.* at 88 (concluding another truth-in-taxation statute did not limit a governmental unit's power to levy taxes). The District's enabling legislation can, in that case, apply alongside those in the Tax Code without conflict. If a zero percent tax rate is not within the prescribed statutory range of rates that the board may impose, of course, the dilemma you describe arises from an ultra vires act of the board. *See* Request Letter at 1. Indeed, a hospital district "may exercise only those powers expressly delegated to it by the Legislature, or which exist by clear and unquestioned implication." *Jackson Cnty. Hosp. Dist. v. Jackson Cnty. Citizens for Continued Hosp. Care*, 669 S.W.2d 147, 154 (Tex. App.—Corpus Christi 1984, no writ). This belies the need to conclude whether a zero percent tax rate is valid when, either way, the dilemma you describe

---

[4] We find no judicial opinion addressing whether the board of directors of a hospital district may set its ad valorem tax rate at zero. Nor has the issue been addressed in an Attorney General opinion. *See, e.g.,* Tex. Att'y Gen. Op. No. GA-0798 (2010) at 1 n.2.

does not follow from statutory conflict. Put simply, there is no conflict between sections 1042.251 and 1042.252 of the Special District Local Laws Code and section 26.07 of the Tax Code— meaning neither "controls" over the other. *See* Request Letter at 2.

> **A county's obligation to provide health care services and assistance pursuant to Health and Safety Code section 61.022 does not apply to a person who resides in the service area of a hospital district.**

You also ask whether the District's responsibilities "automatically fall upon" the County, under section 61.022 of the Health and Safety Code, if the District continues to have an ad valorem tax rate of zero. *Id.* That section requires a county to "provide health care assistance . . . to each of its eligible county residents." TEX. HEALTH & SAFETY CODE § 61.022(a). But this obligation applies only "to a person who does not reside in the service area of a public hospital or hospital district." *Id.* § 61.021; *see also id.* § 61.002(2) (defining "eligible county resident"). Here, of course, "[t]he boundaries of the [D]istrict are coextensive with the boundaries of Hood County." TEX. SPEC. DIST. CODE § 1042.003. Thus section 61.022 does not require the County to provide health care services and assistance to eligible residents when all County residents necessarily reside in the District. *See* Tex. Att'y Gen. Op. No. JM-0722 (1987) at 2–3. Said differently, the District is responsible for these "needy inhabitants." TEX. SPEC. DIST. CODE § 1042.101; *see also* TEX. CONST. art. IX, § 9 (requiring a district to "assume full responsibility for providing medical and hospital care for its needy inhabitants"); TEX. HEALTH & SAFETY CODE §§ 61.051–.068 (emphasizing the District's responsibility).

We cannot predict other possible repercussions for a county if a hospital district's ad valorem tax rate is set at zero. In some instances, a hospital district might receive revenue from sources other than property tax, such as sales and use tax or patient payments. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 285.061 (authorizing certain hospital districts to hold an election to adopt a sales and use tax); TEX. SPEC. DIST. CODE § 1042.111(d)–(g) (addressing the District's authority to hold a patient liable for payment of treatment); *Gilbert*, 38 S.W.3d at 87 ("In addition to property taxes, the District receives money from paying patients, its cafeteria, and Medicaid."). A hospital district facing financial distress might, in other instances, have to declare bankruptcy or seek dissolution. *See, e.g.*, *In re Hardeman Cnty. Hosp. Dist.*, 540 B.R. 229, 231–33 (Bankr. N.D. Tex. 2015); Tex. Att'y Gen. Op. No. JC-0268 (2000) at 3. In sum, the long-term consequences for the County depend on the District's future actions.

### S U M M A R Y

Hood County Hospital District's authority to impose a property tax under Special District Local Laws Code Chapter 1042 does not conflict with the voters' ability to limit a tax-rate increase under Tax Code section 26.07.

A county's obligation to provide health care services and assistance pursuant to Health and Safety Code section 61.022 does not apply to a person who resides in the service area of a hospital district.

Very truly yours,

K E N   P A X T O N
Attorney General of Texas


BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee