IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 25, 2001

## JAMES RICHARD BISHOP v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 60053     Richard Baumgartner, Judge**

---

**No. E2000-01725-CCA-R3-PC**
**July 13, 2001**

---

Petitioner, James Richard Bishop, was convicted of felony murder, especially aggravated kidnapping and aggravated burglary. Following a sentencing hearing, Petitioner was sentenced to life imprisonment for the felony murder and concurrent sentences of twenty years and five years respectively for the especially aggravated kidnapping and aggravated burglary. On appeal, this Court affirmed the judgment of the trial court. State v. James Richard Bishop, No. 03C01-9308-CR-00268, 1994 Tenn. Crim. App. LEXIS 536, at *1, Knox County (Tenn. Crim. App., Knoxville, August 18, 1994), perm. to appeal denied (Tenn. 1994). Petitioner filed a Petition for Post-Conviction Relief in the Knox County Criminal Court, which the post-conviction court subsequently denied. He challenges the denial of his petition, raising the following issue: whether the trial court erred in dismissing his Petition for Post-Conviction Relief, based upon a ruling that Petitioner's allegations of ineffective assistance of counsel were without merit. Based upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal As Of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JERRY L. SMITH, J., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, James Richard Bishop.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Marsha Selecman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In the direct appeal of Petitioner's convictions, this Court summarized the facts as follows:

Around midnight on May 16, 1990, the Defendant called his estranged wife, Bridgett, from a pay phone in Knoxville, Tennessee. Immediately afterward, the Defendant drove to where Bridgett was living, the home of Sheila and Donald Vess, her mother and stepfather, knowingly violating an order of protection. The Defendant approached the house wearing rubber gloves, pistol in hand, and cut the telephone lines. Bridgett saw the Defendant and told Donald Vess to "call the police; somebody's outside."

Vess, the murder victim, got an eight inch butcher knife and went out the back door. He turned on the outside flood lights, locked the deadbolt, exited the porch area, and locked the storm door. Meanwhile, the Defendant walked around the corner of the house toward the back door. As the Defendant peered through the bathroom window, he heard the murder victim yell "Hey," and saw, the butcher knife in the murder victim's hand.

The Defendant threw up his arm and the pistol discharged, fatally wounding the murder victim. The Defendant jerked the storm door open, crossed the porch and forced the wooden door open, breaking the frame and the door in the process. Bridgett, the kidnapping victim, testified that she heard the shot and attempted to call the police. She stated that the Defendant came to her bedroom, put the pistol to her head, pushed her down on the bed and told her that she was going with him. She picked up her baby boy and followed the Defendant to his car. After stopping by the Defendant's apartment for clothes, they drove north from Knoxville on I-75.

The kidnapping victim testified that the Defendant told her "You know your step-father's dead; don't you?" The Defendant also told her that they would change identities and go to Maine; that they would stay, live, and die a family; that he had planned to take her, have his way with her sexually, kill her, and then kill himself; and that he must be a pretty good shot to throw up his arm and kill Donald. The Defendant denied making these statements.

By the time they turned around near Franklin, Kentucky, they had visited at least three rest areas. The kidnapping victim testified that because the Defendant had hurt her before, she feared for her and her son's life and made no effort to escape or communicate her plight to anyone. The Defendant testified that he decided to come back and accept responsibility for his actions. The Defendant made a phone call to his parents, telling his mother that he was going to turn himself in.

On the way back to Knoxville, the Defendant disposed of the pistol at a rest area just before reaching Berea, Kentucky. The Defendant's father positively identified the pistol, which was recovered by the Kentucky State Police on

information received from the kidnapping victim. The Defendant admitted taking the .22 pistol from his father's chifforobe. The Defendant was advised of his Miranda rights upon arrival at his parents' residence. Told that he was being charged with murder, the Defendant replied "I don't know what you're talking about."

The Defendant testified that he was extremely upset on the night in question. He testified that he went to the Vess home with an intent to threaten suicide in order to convince his wife to reconcile. Bishop also testified that he told his wife to come with him if she wanted to go, and she replied that she would. The Defendant testified that he did not intend to kidnap his wife or to shoot Donald Vess.

On February 23, 1996, Petitioner filed a pro se petition for post-conviction relief. Subsequently, the post-conviction court appointed counsel to assist the Petitioner. Appointed counsel filed an amended petition for relief on February 2, 2000. Following a hearing, the post-conviction court denied the petition, entering its written findings of fact and conclusions of law on June 27, 2000. Subsequently, on July 10, 2000, Petitioner filed a timely notice of appeal to this Court.

## POST-CONVICTION HEARING

At the post-conviction hearing, the trial court heard testimony from the Petitioner and one of Petitioner's trial counsel. Petitioner, through his post-conviction counsel, acknowledged that his issue concerning the reasonable doubt instruction read to the jury had been settled by the Tennessee Supreme Court in prior cases, contrary to his legal arguments. Petitioner testified that, if his counsel could have called his mother and cousin (Valerie McCarter) as witnesses, then their testimony could have discredited the testimony of his ex-wife, Bridgett, the especially aggravated kidnapping victim. The Petitioner stated that his wife had testified that she had not met him at the mall, when she had met the Petitioner. He testified that he and his ex-wife met at the mall and spent time together walking and shopping. At some point, they saw Petitioner's cousin, Valerie, sitting with some friends. The Petitioner said that he and his ex-wife talked with his cousin for about twenty minutes and then left. He testified that his ex-wife had gone to the mall with him, during the same time she had an order of protection against him. Petitioner said that he did not recall whether his counsel told him why they did not call his cousin as a witness.

The Petitioner further testified that he did not kidnap his wife. He stated that, while they were on the run, they stopped in Berea, Kentucky for gas. He stayed outside to pump the gas, while his ex-wife went inside by herself. Petitioner testified that if he had kidnapped the victim, then she would have alerted the gas station attendant of her circumstances. He stated that he did not know whether his trial counsel had gone to Kentucky to investigate or to talk to the gas station attendant. Petitioner admitted that he did not suggest to his counsel that they should investigate the Kentucky gas station. He also acknowledged that, at trial, his ex-wife admitted that she did not seek the help of anyone at the Kentucky gas station, because she was afraid of worsening the situation for herself and her eleven-month-old son.

3

The Petitioner also testified that his trial counsel should have called his mother as a witness. Petitioner stated that his mother would have testified that, on the day of the shooting incident, his ex-wife called him and asked him to come over to her stepfather's house. The Petitioner stated that this testimony would have shown the continuous contact between him and his ex-wife. The Petitioner further explained that his mother would have testified that, in the presence of Officer Bill Irwin, the Petitioner told her that he did not kidnap his ex-wife. He stated that this would have contradicted a portion of Officer Irwin's testimony. However, Petitioner testified that he did not remember discussing the possibility of his mother testifying with his trial counsel.

The Petitioner further testified that the killing of Mr. Vess was an accident. He stated that the .22 caliber gun he used had a "hair trigger." He testified that if his counsel had requested the testimony of a firearm expert, then the expert would have testified that the hair trigger caused the shooting. Regarding the weapon, Petitioner also testified that he told his trial counsel that his ex-wife had wiped the gun clean of any fingerprints, before she discarded it.

The Petitioner testified that he did not know why his counsel waived opening argument. He stated that he did not know about counsel's decision to waive opening argument, until just before the start of the trial. Petitioner told the post-conviction court that, if an opening statement had been done, the jury would have had a better first impression of him. He further stated that his counsel failed to object when the trial court did not instruct the jury on any lesser-included offenses of burglary.

The State presented testimony from one of Petitioner's trial counsel, Randall Reagan. Counsel testified that he was appointed to Petitioner's case in 1990. He worked approximately 366 hours on Petitioner's case and met with Petitioner fifteen to twenty times. Counsel stated that he and co-counsel performed their own investigation, during which they interviewed witnesses both in and out of state. Counsel testified that they went to Kentucky to interview witnesses at various places, in addition to some state troopers. Counsel also interviewed members of Petitioner's family. Counsel told the trial court that he and co-counsel believed that they were very prepared for Petitioner's trial. He admitted that, on the day of trial, they made a motion for a continuance, because the State had lost the butcher knife that the victim had in his possession on the night of the murder. However, the trial court denied this motion. Counsel also testified that he thought that he and the Petitioner had a good relationship. He noted that the Petitioner was very cooperative and told him everything he needed to know about Petitioner's case.

As to the specific allegations, Counsel testified that he had spoken with Petitioner's cousin, Valerie McCarter, on at least one occasion. Counsel stated that, while Ms. McCarter had witnessed the meeting between the Petitioner and his ex-wife at East Town Mall, she also knew about other incidents where the Petitioner had assaulted his ex-wife. To keep out information concerning a pending aggravated assault charge Petitioner's ex-wife had filed against him, Counsel decided not to allow Ms. McCarter to testify. Counsel also stated that, since the ex-wife had testified to meeting the Petitioner at the mall, they no longer needed this testimony from Ms. McCarter to show either (1) the continuous contact between the Petitioner and his ex-wife, or (2) that no kidnapping had

4

occurred. Counsel testified that he was sure he had discussed this matter, and other issues, with Petitioner before and during the trial.

Counsel further testified that they went to Kentucky to investigate the rest stop, where the pistol and other evidence were found. Counsel stated that he did not recall whether they had found the exact service station, where the Petitioner and his ex-wife had stopped. He explained that they were able to get into evidence information concerning the times that the ex-wife was away from the Petitioner and in contact with other people, who could have called the police. Counsel testified that they were unable to find any witnesses in Kentucky who remembered seeing the Petitioner and his ex-wife.

Counsel also told the court that he believed he had thoroughly cross-examined the ex-wife about the incident, without bringing out testimony regarding Petitioner's abuse of her or other pending charges. Also, counsel testified that he did not want to press the ex-wife and cause the jury to be "on her side." Counsel added, "There were land mines everywhere in my cross-examination of Ms. Bishop, and I thought I did the best job that I could do under the circumstances in cross-examining her and keeping that out while still making points we wanted to make."

The Petitioner's trial counsel further testified that he believed that permitting Petitioner's mother to testify was too dangerous. Counsel noted that Petitioner's mother also knew about prior incidents of violence carried out by the Petitioner against his ex-wife. Counsel stated that any statements made to Petitioner's mother, in the presence of an officer, were admitted into evidence and removed the need for Petitioner's mother's testimony. Counsel testified that they were also able to elicit testimony from Petitioner's father to show that Petitioner's ex-wife called Petitioner's parents' house several times.

On the issue of a firearm expert, Counsel testified that, at the time of this case, "it was impossible. . . . to get court funds to pay for experts." Counsel cross-examined a witness about the hair trigger on the weapon. Counsel also passed the weapon to the jury and permitted the members to manipulate the weapon and pull the trigger for themselves. In his closing argument, counsel again "demonstrated to [the jury] what little amount of pressure it took to fire that particular firearm." Counsel felt this testimony was sufficient to show the jury that the weapon had a hair trigger, without having to present an expert witness. Counsel was also able to introduce evidence from the Petitioner and his ex-wife about her wiping-off the weapon before getting rid of it in Kentucky.

Counsel further admitted to waiving opening argument. He noted that, at that time, it was not his practice to give an opening statement. Counsel would give an opening statement at the start of voir dire. Counsel said, "very few people at that period in time were giving opening statements." Also, counsel stated that he did not want to give the State "a blueprint of [their] defense," before the State put on its proof. Counsel also stated that he recalled requesting jury instructions on punishment for lesser included offenses. He did not specifically request an instruction on criminal trespass, because he "didn't want to limit the judge in his thinking on what lesser includeds he might instruct."

Counsel further stated his opinion that "the state of the law at that time was that criminal trespass was not a lesser included offense of burglary – or aggravated burglary."

On cross-examination, counsel testified that he did not recall asking for expert services, or participating in any ex parte hearing for expert services in Petitioner's case. Counsel also acknowledged that an objection to Petitioner's father's testimony, regarding phone calls from Mrs. Bishop, was sustained. Counsel stated that, because the trial court gave no curative instruction, the jury was permitted to consider this testimony. Counsel further testified that while he thought opening statements were important, he believed they could be a "pitfall." Counsel said "if you tell the jury you are going to prove something during opening statement and it doesn't get proven, then they don't have any reason to trust you for anything else." Counsel did not recall the Petitioner giving him the specific name of any places or gas stations in Kentucky. Counsel also did not recall whether records of local phone calls were available.

Upon review of Petitioner's case, the post-conviction court denied the petition for post-conviction relief. The trial court found that Petitioner's challenge to trial counsel's failure to object to the reasonable doubt instruction was without merit. The trial court also noted that Petitioner conceded to the fact that Tennessee law on this issue was settled in Carter v. State, 958 S.W.2d 620, 626 (Tenn. 1997) (upholding the use of jury instructions including the phrase "moral certainty"). The trial court also found that any failure to charge or raise criminal trespass as a lesser included offense to aggravated burglary was harmless error, since the sentence for the aggravated burglary conviction was to run concurrently with the felony murder conviction. The post-conviction court also found that counsel's waiver of opening statement was a trial tactic and that Petitioner suffered no prejudice as a result of this tactic.

The court further found no prejudice in trial counsel's failure to call Petitioner's mother to testify that Petitioner's ex-wife had contacted him by telephone and in person, after an order of protection had been implemented against the Petitioner. The post-conviction court found that trial counsel's reasons for not calling Petitioner's mother and cousin were persuasive. The court also held that Petitioner had failed to present sufficient proof at his post-conviction hearing to support his position that trial counsel should have obtained a firearm's expert to testify. The post-conviction court further concluded that the Petitioner's claims relating to counsel's failure to call character witnesses and to establish that the ex-wife had wiped prints off of the murder weapon, did not support a claim of ineffective assistance of counsel.

## ANALYSIS

The 1995 Post Conviction Procedure Act provides that a petitioner seeking post-conviction relief has the burden of establishing his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict, and may not be re-weighed or re-evaluated by this Court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, a trial court's findings are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6

S.W.3d 453, 461 (Tenn.1999). The court's application of the law to the facts, however, is reviewed de novo, without any presumption of correctness. Id. A claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact, and is also subject to a de novo review. Id.; see Jehiel Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001)

In determining whether counsel provided effective assistance, this Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim that his counsel was ineffective, a petitioner bears the burden of proving (1) his counsel's performance was deficient and (2) he was prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To prove that his counsel's performance was deficient, the petitioner must show that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases. . ." Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). The petitioner must establish that trial counsel's "acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Under this second prong, the petitioner must show that the prejudice was such that there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. Strickland, 466 U.S. at 694; Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990).

When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all the facts and circumstances. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

## A. Failure to Object to Reasonable Doubt Instruction

The Petitioner asserts that his counsel was ineffective in failing to object to the trial court's instruction on reasonable doubt, which required a finding of "moral certainty" as to the Petitioner's guilt. The trial court instructed the jury:

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a captious, possible or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

We note that the Petitioner concedes that the Tennessee Supreme Court has found this to be a correct statement of the burden of proof required in criminal trials. See State v. Nichols, 877 S.W.2d 722, 734-35 (Tenn. 1994); see also, State v. Hall, 976 S.W.2d 121, 159 (Tenn. 1998). In Nichols, the supreme court held that such an instruction properly addresses "the evidentiary certainty required by the 'due process' clause of the federal constitution and the 'law of the land' provision

7

in our state constitution." Id. Thus, we find that Nichols is the controlling law, and that Defendant is not entitled to relief on this issue.

**B. Failure to Request Trial Court to Charge Criminal Trespass as a Lesser-Included Offense of Aggravated Burglary**

The Petitioner's next issue is that his trial counsel was ineffective in failing to request that the trial court instruct the jury on criminal trespass as a lesser-included offense of aggravated burglary. He argues that the trial court was obligated to charge the jury on all offenses in the indictment. He further asserts that nothing in the record supports the aggravated burglary charge, as there was no evidence that he lacked permission to be on the murder victim's premises. The State argues that this not a proper ground for an ineffective assistance of counsel complaint. It also contends that criminal trespass is not a lesser included offense of aggravated burglary and should not have been charged. The post-conviction court found that, even if an instruction were warranted, the error was harmless because the aggravated burglary conviction was to run concurrently with the felony murder conviction.

A trial court has a duty to charge the jury on all lesser included offenses included in the indictment even if the defendant does not request it. Tenn. Code Ann. § 40-18-110. An instruction on a lesser included offense must be supported by some factual basis. Burns, 6 S.W.3d at 467. In this respect, the evidence presented at Petitioner's trial did not warrant instructions on the lesser included offense of criminal trespass.

At the time of Petitioner's conviction, the state of the law was such that an aggravated burglary was "committed when a person without the effective consent of the property owner enters a habitation with intent to commit a felony or theft." See Tenn. Code Ann. § 39-14-401, 402 and 403 (1991). Tennessee Code Annotated further provided that "a person commits criminal trespass who, knowing the person does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof. See Tenn. Code Ann. § 39-14-405 (1991). Moreover, in State v. Vance, 888 S.W.2d 776, 779 (Tenn. Crim. App. 1994), this Court determined that *under the facts of that case* criminal trespass was a lesser-included offense of aggravated burglary. See also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999); State v. Boyce, 920 S.W.2d 224, 226 (Tenn. Crim. App. 1995).

However, under the "statutory elements approach" applied by Tennessee courts, there is a question as to whether criminal trespass is a lesser-included offense of aggravated burglary. See State v. Lee Russell Townes, No. W1999-01126-CCA-R3-CD, 2000 WL 1229062, at *6, Carroll County (Tenn. Crim. App., Jackson, Aug. 18, 2000) (holding that criminal trespass is not a lesser-included offense of aggravated burglary under the statutory elements approach" advanced by Burns). In Townes, a panel of this Court questioned whether Burns could be applied retroactively to find that criminal trespass is a lesser-included offense of aggravated burglary, particularly when the offenses predate State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), which Burns overruled. Townes, 2000 WL 1229062, at *7. The panel in Townes concluded that Burns was the controlling law and that "it

trumps cases such as Langford, Boyce and Vance, with the result that criminal trespass cannot, under any facts, be a lesser-included offense of burglary." Id.

We note that our Courts have only applied Burns, retroactively, to cases which were in the appellate pipeline and pending at the time the decision in Burns was announced. See, e.g., State v. Billy Joe Stokes, 24 S.W.3d 303 (Tenn. 2000); State v. Terry T. Lewis, 38 S.W.3d 88 (Tenn. Crim. App. 2000); State v. Jumbo Kuri, No. M1999-00638-CCA-R3-CD, 2000 WL 680273, at * 5 (Tenn. Crim. App., Nashville, May 25, 2000); State v.. Harvey Phillip Hester, No. 03C01-9704-CR-00144, 2000 WL 294964 (Tenn. Crim. App, Knoxville, Mar. 22, 2000); State v. Khanh V. Le, No. W1998-00637-CCA-R3-CD, 2000 WL 284425 (Tenn. Crim. App., Jackson, Mar. 9, 2000); State v. Gary Lee Miller, No. M1998-00788-CCA-R3-CD, 2000 WL 246452 (Tenn. Crim. App., Nashville, Mar. 6, 2000); State v. Brandon Patrick, No. 03C01-9905-CC-00201, 2000 WL 122247 (Tenn. Crim. App, Knoxville, Jan. 26, 2000); State v. David Michael Gamble, No. 03C01-9812-CR-00442, 2000 WL 45718 (Tenn. Crim. App., Knoxville, Jan. 21, 2000). Because the Petitioner was convicted in 1991 and his conviction became final in 1994 (five years prior to Burns), we conclude that Burns does not apply retroactively to his case. Thus, we apply the law as it existed at the time of Petitioner's conviction.

We find that, at the time of Petitioner's trial, criminal trespass was considered a lesser-included offense of aggravated burglary. However, we conclude that the Petitioner has failed to show that he was prejudiced by his counsel's failure to request an instruction on criminal trespass. The evidence at trial indicated that the Petitioner arrived at the Vess residence at approximately midnight, with rubber gloves on and a .22 caliber pistol. The Defendant cut the telephone lines and attempted to enter the house. After encountering the murder victim, Mr. Vess, and shooting him, the Petitioner went inside the house and forced his ex-wife and son to leave with him. Thus, the proof clearly developed the only issue to be the existence of aggravated burglary or no offense at all. Tennessee courts have held that trial courts need not instruct the jury on a lesser included offense when the proof would support only the greater offense or no offense at all. See Moorman v. State, 577 S.W.2d 473, 475 (Tenn. Crim. App. 1978); see also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)("Failure to instruct is not error where the record clearly shows that the defendant was guilty of the greater offense and the record is devoid of any evidence permitting an inference of guilt of the lesser offense." ). Thus, Petitioner's trial counsel provided him the effective assistance of counsel and the Petitioner has failed to show prejudice from this failure.

We also note that the trial court's harmless error reasoning was incorrect. The post-conviction court found that, even if the evidence at Petitioner's trial warranted a charge on criminal trespass, any error by the trial court would amount to harmless error because the aggravated burglary conviction was ordered to run concurrently with Petitioner's felony murder conviction. Regardless of how the sentences are to be served, the Tennessee Post-Conviction Act provides that a petitioner is entitled to relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. 40-30-203 (1997). Thus, if counsel had rendered ineffective assistance of counsel,

9

to the prejudice of the Petitioner regarding the aggravated burglary conviction, Petitioner would be entitled to relief from that particular conviction regardless of how the sentence was to be served.

## C. Trial Counsel's Waiver of Opening Statement

The Petitioner also challenges his counsel's failure to make an opening statement. However, counsel testified that his decision to forego an opening statement was a tactical decision to avoid granting concessions to the State or adopting any positions prior to hearing the State's proof. Waiver of an opening statement has been held to be a valid strategy decision, whether or not ultimately successful or even wise when viewed in hindsight. See Aaron Jermaine Walker v. State, No. 03C01-9802-CR-00046, 1999 WL 39511, at *2, Hamilton County (Tenn. Crim. App., Knoxville, Jan. 28, 1999), perm. to appeal denied (Tenn. 1999) (citing Bacik v. Engle, 706 F.2d 169, 171 (6th Cir. 1983)). Moreover, this court has previously acknowledged that overstatement or misstatement during opening statement may have an adverse effect. State v. Zimmerman, 823 S.W.2d 220, 225 (Tenn. Crim. App. 1991).

## D. Failure to Present Evidence

The Petitioner's claim of ineffective assistance of counsel is also based on the failure of his trial counsel to present evidence that Petitioner was not guilty of especially aggravated kidnapping (and therefore not guilty of felony murder) and to present evidence that his ex-wife had aided him in wiping-off the murder weapon.

First, the Petitioner alleges that trial counsel was deficient because of a failure to present evidence to show that his ex-wife, the kidnapping victim, willingly went with the Petitioner. The Petitioner asserts that trial counsel failed to establish that, despite the prior order of protection his ex-wife had obtained against him, she continued to see him and call him. On this point, Petitioner contends his trial counsel failed to call his mother and his cousin, Valerie McCarter, as witnesses.

When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. Black, 794 S.W.2d at 757. Generally, this is the only way a petitioner can establish that (a) a material witness existed who could have been discovered but for counsel's neglect in the investigation of the case; (b) a known witness was not interviewed; (c) the failure to discover or interview a witness inured to his prejudice; and (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the appellant. Id. at 757. Although the Petitioner asserts that his mother and cousin may have testified that his ex-wife either continued to call him or see him during the months leading up to the murder, they never testified at the post-conviction hearing. Neither the trial court nor this court may speculate about what the testimony of these witnesses might have been. Id. Therefore, we find that Petitioner has failed to prove any deficiency by trial counsel, or that the failure of counsel to call these witnesses prejudiced him.

Second, the Petitioner maintains that his trial counsel should have introduced evidence to show that his ex-wife wiped-off the murder weapon before she discarded it. The Petitioner asserts that such evidence would have shown that he did not kidnap his ex-wife, but that she had willingly gone with him to Kentucky. While Petitioner's trial counsel did not present evidence on this issue, beyond Petitioner's testimony, this does not establish that counsel was ineffective. During her trial testimony, the ex-wife testified that the Petitioner had wiped-off the gun, put the gun in a box, placed the box in a paper bag, and then placed the bag in a trash can at a rest stop along the interstate. The post-conviction court found that the jury had obviously chosen to accept the ex-wife's testimony, rather than the Petitioner's testimony. The post-conviction court also found that counsel's performance had caused no prejudice to the Petitioner. The Petitioner has the burden of showing that there is a reasonable probability that but for counsel's error the result of the proceeding would have been different. Butler, 789 S.W.2d at 900. He has failed to do so. The Petitioner has advanced no argument regarding how trial counsel's deficiencies inured to his detriment. As a result, we cannot find that the evidence preponderates against the conclusions of the post-conviction court.

## F. Failure to Obtain Funding for An Expert Firearms Witness

In his final issue, Petitioner contends that his trial counsel's failure to request funding for a firearm expert deprived him of the effective assistance of counsel. Petitioner argues that a firearms expert could have supported his position that this was an accidental shooting, rather than a murder. The post-conviction court found that Petitioner failed to present sufficient proof at the hearing to support his position. Particularly, the Petitioner failed to present the testimony of a firearm's expert, at the post-conviction hearing, to prove what the testimony at trial would have been, if his trial counsel had called a firearm expert as a witness. See Black, 794 S.W.2d at 757 (petitioner has the burden of producing witnesses at the post-conviction hearing). The court further found that evidence of an accidental shooting was properly placed before the jury, without contest from the State. The trial court finally noted that funds for expert witnesses were not available in noncapital cases at the time of Petitioner's case. We agree with the findings of the post-conviction court, and also find that the Petitioner has failed to present any evidence that would preponderate against the findings of the post-conviction court. The Petitioner is not entitled to relief on this issue.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE

11