In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00173-CV


______________________________




LAMAR COUNTY APPRAISAL DISTRICT AND LAMAR 


COUNTY APPRAISAL REVIEW BOARD, Appellants



V.



CAMPBELL SOUP COMPANY, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 66074




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Lamar County Appraisal District (District) and the Lamar County Appraisal Review Board
(ARB) appeal a summary judgment rendered in favor of Campbell Soup Company. Campbell Soup
filed suit against the District and the ARB, challenging the validity of the increase in appraised value
for 1998 ad valorem tax purposes of its spaghetti sauce plant (Prego plant) located in Paris, Texas. 
The judgment held the purported increased assessment for 1998 was invalid because Campbell Soup
had not been given proper notice as required by Tex. Tax Code Ann. § 41.11 (Vernon 2001). The
judgment also reinstated the prior assessment for the Prego plant, ordered assessment officials to
reinstate the lower assessment on the records, and awarded court costs to Campbell Soup. The trial
court also overruled objections to Campbell Soup's summary judgment evidence. 

 The District and the ARB (hereafter collectively, "Appellants") contend the trial court erred
1) in granting summary judgment because the trial court should have conducted a trial de novo on
the merits of the assessment placed on the property without regard to any actions taken by
Appellants; 2) in ruling that Tex. Tax Code Ann. § 41.11(a) (Vernon 2001) determines the
appropriate notice of an assessment increase; 3) in granting Campbell Soup's motion for summary
judgment because no summary judgment  evidence  exists  establishing  as  a  matter  of  law   that
Section 41.11 applies to this situation; 4) in granting Campbell Soup's motion for summary judgment
as it failed to establish, as a matter of law, that an entire category of property was not challenged or
that any one property owner's property was improperly challenged; and 5) in overruling Appellants'
objections to certain summary judgment evidence submitted by Campbell Soup. 

Appraisal Districts, Appraisal Review Boards, and Taxing Unit Challenges

 An appraisal district is established by statute in each county, responsible for appraising
property in the district for ad valorem tax purposes, for each taxing unit, e.g., school district or
municipality, imposing such taxes. Tex. Tax Code Ann. § 6.01 (Vernon 2001).

 An appraisal review board is established for each appraisal district and consists of three
members appointed by the appraisal district board of directors. Tex. Tax Code Ann. § 6.41
(Vernon 2001). Appraisal review boards are vested by law with, inter alia, two duties: to determine
protests initiated by property owners and to determine challenges by taxing units. Tex. Tax Code
Ann. § 41.01(a)(1), (2) (Vernon 2001). 

 A taxing unit may challenge, inter alia, the level of appraisals in any category of property in
the district or in any territory of the district, but not the appraised value of a single taxpayer's
property. Tex. Tax Code Ann. § 41.03(a)(1) (Vernon 2001); Carr v. Bell Savings & Loan Ass'n,
786 S.W.2d 761, 764 (Tex. App.-Texarkana 1990, writ denied). An appraisal review board is
required to hear a challenge only if the taxing unit files a petition with the board before June 1 or
within fifteen days after the date that the appraisal records are submitted to the board, whichever is
later. The petition must include an explanation of the grounds of such challenge. Tex. Tax Code
Ann. § 41.04 (Vernon 2001). Upon the filing of a challenge, an appraisal review board is required
to give notice and hold a hearing. At the hearing, the taxing unit initiating the challenge and all other
interested taxing units are entitled to an opportunity to appear and offer evidence or argument. Tex.
Tax Code Ann. §§ 41.05, 41.06 (Vernon 2001). The board is required to make a determination on
each challenge, enter an appropriate written order, and send notice of the determination to the taxing
unit. Tex. Tax Code Ann. § 41.07 (Vernon 2001).

 The statute requires an appraisal review board, by July 20, to determine all or substantially
all timely filed protests from taxpayers and all timely filed challenges from taxing units, and to
approve the appraisal records. Tex. Tax Code Ann. § 41.12 (a), (b) (Vernon 2001). 

Summary Judgment Standards

 A summary judgment is proper only when the movant establishes that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law. See Tex. R. Civ. P 166a. 
In deciding whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true, and every reasonable inference and doubt must be
indulged and resolved in the nonmovant's favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548-49 (Tex. 1985).

Trial De Novo

 Appellants first contend the trial court erred in admitting and considering as summary
judgment evidence the actions undertaken by the ARB and the chief assessor, contrary to the
applicable statute which authorizes judicial review of such action. Tex. Tax Code Ann. §§ 42.01,
42.21, and 42.22 (Vernon 2001), authorize a petition for review by a taxpayer in the district court
of Lamar County regarding an order of the ARB. Tex. Tax Code Ann. § 42.23 (Vernon 2001), sets
forth the scope of review of the trial court in such cases:

 (a) Review is by trial de novo. The district court shall try all issues of fact and law
raised by the pleadings in the manner applicable to civil suits generally.

 

 (b) The court may not admit into evidence the fact of prior action by the appraisal
review board or comptroller, except to the extent necessary to establish its
jurisdiction.

 

 (c) Any party is entitled to trial by jury on demand.

 

 Appellants contend that, as review is by "trial de novo" and subsection (b) specifically
prohibits the admissibility of evidence about the prior action by the ARB, the trial court improperly
considered such action in granting summary judgment. Campbell Soup contends that lack of notice
goes to the jurisdiction of the ARB and the trial court, and thus may be considered in this instance. 
 The phrase "trial de novo" is generally defined as a new trial on the entire case, on both
questions of fact and issues of law, conducted as if there had been no trial in the first instance. 
Black's Law Dictionary 1512 (7th ed. 1999). As a general rule, cases have held that, when a
statute uses the phrase "with regard to the review of a lower court or agency decision," it means just
that-a complete new trial without reference to any procedural errors that may have occurred in the
lower court or in the agency subject to appellate review. As a general rule, a "trial de novo" cures
all procedural defects in the proceedings below. See, e.g., Catlett v. Local 7370, United Paper
Workers, 69 F.3d 254, 259 (8th Cir. 1995). 

 In Gulf, C. & S.F. Ry. Co. v. Lemons, 152 S.W. 1189 (Tex. Civ. App.-Fort Worth 1912),
rev'd on other grounds, 109 Tex. 244, 206 S.W. 75 (1918), the court of civil appeals considered the
standard to be applied by a district court in its review by certiorari of a county court decision, which
the applicable statute provided was to be by trial de novo:

 It could neither affirm the order of the county court upon the record sent up from it,
nor reverse an order for errors committed and remand the case for a new trial. In the
district court the cause must be retried upon its merits, without any reference to
errors in procedure committed upon the hearing in the county court . . . .

 

Id. at 1190 (emphasis added). (1) 

 Texas courts in a number of cases have acknowledged that the general rule pertaining to trial
de novo is proper in reviewing assessments placed on property by appraisal districts. (2) However,
notice to the taxpayer of an increase in tax liability was not the primary issue in any of these cases. 
Tex. Tax Code Ann. § 41.11(c) states that the failure to give notice to the taxpayer in a situation
where a tax unit challenge results in an increase to an individual taxpayer "nullifies the change in the
records to the extent the change is applicable to that property owner." Other statutes recognize the
significance of notice to the taxpayer. For example, Tex. Tax Code Ann. § 41.411 (Vernon 2001),
specifically gives a taxpayer an opportunity to file a protest and be heard by the appropriate appraisal
review board regarding an increased assessment-even if that board failed to give him the required
notice. If a taxpayer can establish the failure to provide or deliver the necessary notice, he is entitled
to a determination on the grounds of his protest, even if he has failed to appeal properly. Tex. Tax
Code Ann. § 41.411(b).

 Giving proper notice of an increased assessment is a jurisdictional requirement for an
appraisal review board's authority to consider an increase. Harris County Appraisal Review Board
v. Gen. Elec. Corp., 819 S.W.2d 915, 920 (Tex. App.-Houston [14th Dist.] 1991, writ denied);
Garza v. Block Distrib. Co., 696 S.W.2d 259, 262 (Tex. App.-San Antonio 1985, no writ). 

 Therefore, we hold that the issue of proper notice, being determinative of the ARB's
jurisdiction, may be considered in this appeal, even in a trial de novo. While the review is de novo, 
the trial court's jurisdiction is still appellate in nature and dependent upon the ARB's having properly
acquired jurisdiction. An appellate court may exercise jurisdiction and rule on the merits of an
appeal only if the lower court properly exercised jurisdiction. See 4 Tex. Jur. 3d, Appellate Review,
§ 23. An agency may exercise only those specific powers that the Legislature confers on it in clear
and express language. Sportscoach Corp. of Am. v. Eastex Camper Sales, 31 S.W.3d 730, 734 (Tex.
App.-Austin 2000, no pet.). Because notice is jurisdictional, the trial court correctly permitted
Campbell Soup to introduce summary judgment evidence about the fact and timing of the notice
provided by the ARB. This issue is overruled.

Section 41.11(a) 

 In their second and third issues, Appellants contend the trial court erred in ruling that their
failure to give Campbell Soup the notice specified in Tex. Tax Code Ann. § 41.11(a) requires that
the increased assessment for 1998 be set aside. 

 We begin by examining the language of the applicable statutes. 

 (a) Not later that the date the appraisal review board approves the appraisal records
as provided by Section 41.12, the secretary of the board shall deliver written notice
to a property owner of any change in the records that is ordered by the board as
provided by this subchapter and that will result in an increase in the tax liability of
the property owner. An owner who receives a notice as provided by this section shall
be entitled to protest such action as provided by Section 41.44 (a)(2).

 

 (b) The secretary shall include in the notice a brief explanation of the procedure for
protesting the change.

 

 (c) Failure to deliver notice to a property owner as required by this section nullifies
the change in the records to the extent the change is applicable to that property
owner. 

 

 Tex. Tax. Code Ann. § 41.11.

 (a) By July 20, the appraisal review board shall:

 (1) hear and determine all or substantially all timely filed protests:

 (2) determine all timely filed challenges;

 (3) submit a list of its approved changes in the records to the chief appraiser; and

 (4) approve the records.

 (b) The appraisal review board must complete substantially all timely filed protests
before approving the appraisal records and may not approve the records is the sum
of the appraised values, as determined by the chief appraiser, of all properties on
which a protest has been filed but not determined is more that five percent of the total
appraised value of all other properties.

 

 Tex. Tax Code Ann. § 41.12.

 The quoted sections are part of that portion of the Texas Tax Code which provides for
challenges by taxing units of the appraisals by the appraisal district. See generally 69 Tex. Jur. 3d,
§§ 431- 434. Tex. Tax Code Ann. § 41.03(a)(1) (Vernon 2001) authorizes a taxing unit challenge
to the levels of any category of property in the district, "but not the appraised value of a single
taxpayer's property." The taxing unit must file its challenge petition before June 1 or within fifteen
days after the date appraisal records are submitted to the appraisal review board, whichever is later. 
Tex. Tax Code Ann. § 41.04.

 The ARB then holds a hearing on the challenge petition, before which the affected taxing
units are entitled to ten days' notice, and at which they are entitled to appear and offer evidence or
argument. Tex. Tax Code Ann. §§ 41.05, 41.06. In Section 41.05, no time deadlines are specified
for the date of such hearing. Tex. Tax Code Ann. § 41.07(a)-(d) (Vernon 2001) provides the
appraisal review board must determine such challenges and issue a written order of such
determination. If it finds that appraisal records are incorrect in some respect as raised by the
challenge, the appraisal review board then directs the chief appraiser to make reappraisals or
corrections in the records as necessary. Subsection (c) provides that the board shall determine all
challenges before approval of the appraisal records as provided in Tex. Tax Code Ann. § 41.12. 
Tex. Tax Code Ann. § 41.08 (Vernon 2001), requires the chief appraiser to make the reappraisals
or other corrections as ordered by the board, and to submit a copy of the corrected records to the
appraisal review board "as promptly as practicable." 

 Campbell Soup raises a number of arguments in support of the trial court's ruling. It argues
that it was entitled to notice and the opportunity to be heard at the hearing required by Sections 41.05
and 41.06. The applicable statutes do not provide for any notice to individual taxpayers of such
hearings. Appellants correctly argue that such notice is not necessary because the taxing unit is by
statute prohibited from challenging the individual appraisal of any taxpayer. Further, when an
appraisal review board sustains a challenge by a taxing unit, that decision does not, in and of itself,
cause any increase in the level of the appraised value of any property. Section 41.08 provides that,
when an appraisal review board sustains a challenge, the chief appraiser is then required to make
reappraisals and corrections and submit a copy thereof to the board as promptly as practicable. 

 As Appellants correctly argue, such reappraisal may or may not result in an increased
assessment: it may result in no change or (at least theoretically) even a decrease. Campbell's Soup
is therefore not a party to the taxing unit challenge proceedings and is not affected unless and until
the chief appraiser's correction or reappraisal results in an increased appraised value of its plant. 
This Campbell Soup argument is rejected.

 Further, there is no failure of constitutional due process. The record demonstrates that
Campbell Soup did receive notice of a hearing on the proposed increase and that it did appear at the
hearing and was given an opportunity to be heard and to present evidence. The statute also provides
for a trial de novo in the district court, regarding the determination of fair market value of its
property. These safeguards are sufficient to satisfy due process. See Keggereis v. Dallas Cent.
Appraisal Dist., 749 S.W.2d 516, 518 (Tex. App.-Dallas 1988, no writ).

 The language of Section 41.11 is critical to our analysis. It requires the ARB to give notice
to the taxpayer of any increase resulting from a tax unit challenge by July 20. It also provides a
statutory "nullification" of any increase if such notice is not sent. The July 20 deadline applies to
the ARB's determination of any taxing unit challenge, but is not the deadline for the chief appraiser
to make reappraisals or corrections resulting from such determination; these are required by a
different statute to be completed only "as promptly as practicable." Tex. Tax Code Ann. § 41.08. 
The record in this case shows that the ARB complied with the statute and determined the North
Lamar Independent School District challenge by July 20, but the chief appraiser did not complete
her reappraisal of the Prego plant by that date. Therefore, on July 20 there was no reason to give
notice because nothing had happened yet that would trigger the notice provisions. 

 We are confronted with a dilemma and a matter of first impression. Affirming the trial
court's ruling would effectively require not only that the ARB complete its determination of a taxing
unit challenge by July 20, but also that the chief appraiser's reappraisals as a result of the
determination of such challenge be completed by that date in order to comply with the notice
requirements. This would add requirements not expressly in the statutory scheme. 

 On the other hand, sustaining Appellants' contentions, inter alia, that other notice provisions,
such as Tex. Tax Code Ann. § 25.19 (Vernon 2001), would apply in this situation, and that, in any
case, Campbell Soup has received all the due process to which it is entitled, would also add to Tex.
Tax Code Ann. § 41.11(a) and (c) an exception not enacted by the Legislature. Those statutes
specifically impose a notice deadline on increases resulting from taxing unit challenges. That
deadline is much more than just a suggestion. This is made obvious, as shown by the teeth provided
by the Legislature for a failure to comply: nullification of the increase. The statutes as written
therefore contain an obvious ambiguity, inconsistency, error, or omission.

 Our task in interpreting statutes is, first of all, to carry out the Legislature's intent. Gilbert
v. El Paso County Hosp. Dist., 38 S.W.3d 85, 89 (Tex. 2001); Calvert v. Texas Pipe Line Co., 517
S.W.2d 777, 780-81 (Tex. 1974). In so doing, we are to examine the entire legislative scheme, not
just isolated parts thereof. Calvert, 517 S.W.2d at 781. We are not free to rewrite statutes to reach
a result we might consider more desirable or to write special exceptions into a statute so as to make
it inapplicable under certain circumstances. Pub. Util. Comm'n of Tex. v. Cofer, 754 S.W.2d 121,
124 (Tex. 1988). As a general rule, ambiguities in tax laws are to be strictly construed against the
taxing authority and in the taxpayer's favor. Sharp v. Park 'N Fly of Tex., Inc., 969 S.W.2d 572, 574
(Tex. App.-Austin 1998, pet. denied). 

 Applying these principles of statutory construction, we hold that the Legislature's intent is
clearly expressed in Tex. Tax Code Ann. § 41.11(a) and (c) that notice of any increase in a
taxpayer's appraised value, occurring as a result of a taxing unit challenge, be made as specified
therein. The statute states in no uncertain terms that, unless the taxpayer is notified as required by
statute, the increase is a nullity as to that property. The Legislature was presumably aware of other
notice provisions in the tax code, yet did not refer to them in this statute. The Legislature could
have provided that notice was to be sent to the taxpayer upon the completion by the chief appraiser
of any reappraisal and that the taxpayer affected thereby would have a subsequent opportunity to
protest. It did not do so. While it appears that the disparity in the time deadlines was overlooked,
we cannot rewrite the statute to provide an exception to the required notice that would apply where
the taxing unit challenge has been determined but the chief appraiser has not completed the
reappraisals by July 20. The applicable rules of statutory construction require that we construe such
ambiguity in favor of the taxpayer. The statutory scheme for tax unit challenges provides that the
challenge by the taxing unit be filed before June 1, or within fifteen days after the appraisal records
are certified. Under our construction, the ARB and the chief appraiser would still have time to
comply with the July 20 deadline if they acted with dispatch on any taxing unit challenge. This issue
is overruled.

The Taxing Unit Challenge

 Appellants also contend that North Lamar I.S.D.'s challenge to the appraisals was a proper
challenge to the level of appraisals in a category of property, as authorized by statute, and was not,
as contended by Campbell Soup, a challenge to the valuation of their property alone.

 The trial court's judgment was not based on this contention, although Campbell Soup did
raise this as one of its bases for its motion for summary judgment. In Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 625 (Tex. 1996), the Texas Supreme Court held that courts of appeals
"should consider all summary judgment grounds that the trial court rules on and the movant
preserves for appellate review that are necessary for final disposition of the appeal when reviewing
a summary judgment . . ." and further,". . . the appellate court may consider other grounds that the
movant preserved for review and the trial court did not rule on in the interest of judicial economy." 
Id. (emphasis added). 

 Campbell Soup has not filed a cross-appeal, nor has it filed a cross-point of error in its brief,
seeking to have this Court sustain the award of summary judgment on this basis. See id. at 624. (3) 

 We overrule this issue because the trial court did not grant summary judgment on this basis
and because Campbell Soup did not in its brief properly raise this alternative grounds for summary
judgment. This issue is overruled.

Summary Judgment Evidence

 Appellants also contend the trial court erred in overruling their objections to summary
judgment evidence offered by Campbell Soup. Specifically, Appellants contend that tape recordings
of statements made by a representative of North Lamar I.S.D. at the hearing held on the taxing unit
challenge constituted inadmissible hearsay. The trial court "denied" the objections. In response,
Campbell Soup contends, alternatively, that the recordings were not hearsay since they were not
offered for the truth of the matter asserted therein, that they fell within exceptions to hearsay based
on statements and admissions of a party opponent. 

 The tape recordings were offered to support Campbell Soup's contention that the taxing unit
challenge violated the statute forbidding challenges to the appraisals of individual taxpayers'
properties. The trial court's summary judgment found for Campbell Soup, based on the failure of
Appellants to give proper statutory notice. The trial court did not address the issue of the propriety
of the taxing unit challenge. 

 Thus, overruling Appellants' objections, even if erroneous, would not have probably "caused
the rendition of an improper judgment," or "prevented the appellant from properly presenting the
case to the court of appeals," and thus would be harmless error. Tex. R. App. P. 44.1. This issue is
overruled.

 We affirm the trial court judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 13, 2002

Date Decided: December 3, 2002


Publish
1. However, in some statutes providing for judicial review of administrative decisions, the
phrase "trial de novo" is employed, but is held to constitute "substantial evidence" review. See
Dallas County Civil Serv. Comm'n v. Warren, 988 S.W.2d 864, 869 (Tex. App.-San Antonio 1999,
no pet.); Collingsworth Gen. Hosp., et al. v. Hunnicutt, 988 S.W.2d 706, 708 (Tex. 1998). 
2. In Cherokee Water Co. v. Gregg County Appraisal Dist., 801 S.W.2d 872 (Tex. 1990), the
Texas Supreme Court, in discussing the argument that the trial court on such an appeal had no
authority to raise the fair market value for assessment purposes, noted that the appeal in the district
court is a trial de novo, that Tex. Tax Code Ann. § 42.23 (Vernon 2001), prohibits the introduction
of evidence of a prior action of an appraisal review board, and that Tex. Tax Code Ann. § 42.24
(Vernon 2001), places on the trial court the duty of fixing the appraised value of the property. 
Cherokee Water Co., 801 S.W.2d at 877. In Harris County Appraisal Dist. v. Duncan, 944 S.W.2d
706 (Tex. App.-Houston [14th Dist.] 1997, pet. denied), the court noted the de novo review
standard, and that prior action by the appraisal review board about the assessment was not admissible
in such trial de novo. Id. at 709. In Board of Appraisal Review, Travis County Appraisal Dist. v.
Protestant Episcopal Church Council, 676 S.W.2d 616 (Tex. App.-Austin 1984, writ dism'd), a tax
exemption appeal, the court stated the "substantial evidence" standard of review of the ARB's
determination was not applicable, that the review in the trial court was de novo, and that the board's
decision was not even admissible except to establish jurisdiction. Id. at 623. A challenge to the
appraisals for a certain class of property made by a taxing unit are also subject to judicial review
under the trial de novo standards. Atascosa County, et al. v. Atascosa County Appraisal Dist., 990
S.W.2d 255, 259 (Tex. 1999).
3. But, see Baker Hughes, Inc. v. Keco R.& D., Inc., 12 S.W.3d 1, 5 (Tex. 2000), in which the
Court, in upholding the Cincinnati Life holding, stated:


 In Cates we held that the appellate court must review all of the summary judgment
grounds on which the trial court actually ruled, whether granted or denied, and which 
are dispositive of the appeal, and may consider any grounds on which the trial court

 did not rule.


This latest pronouncement of the rule did not include the requirement that the movant preserve the 
issue for appeal. 



ed.
Enhancement of Punishment
          May next contends the trial court erred by allowing the State to enhance
punishment. He argues that adequate and proper notice was not given of the intent to
enhance. The record shows, however, that notice was given by a "STATE'S NOTICE OF
INTENT TO SEEK ENHANCED PUNISHMENT DUE TO PRIOR FELONY
CONVICTIONS." As recently acknowledged by this Court, the Texas Court of Criminal
Appeals has held that prior convictions used as enhancements must be pled in some form,
but not necessarily in the indictment. Brooks v. State, 957 S.W.2d 30, 33 (Tex. Crim. App.
1997); Cochran v. State, 107 S.W.3d 96, 98 (Tex. App.—Texarkana 2003, no pet.) (finding
a letter inadequate to meet requirements). 
          In this case, the document is a pleading. That is sufficient to meet the requirements
of Brooks. The contention of error is overruled.
Disclosure of Victim's School Records
          May next contends the trial court erred by refusing to allow him to discover B.B.'s
school records pursuant to his subpoena duces tecum. Counsel sought those records,
arguing they might allow him to impeach the victim or locate witnesses who could testify
about her reputation for truthfulness. The court reviewed the records in camera under a
motion to quash filed by the school and the State, and determined they should not be
turned over to counsel. The records have been provided to this Court for review. Counsel
has made no specific argument concerning harm, which is entirely reasonable given that
he has not been allowed to examine the documents involved.
          The school cited the court to 20 U.S.C.A. § 1232g(b)(2)(A), (B) (West 2000) as
reason to quash.


 That statute provides that the federal government shall not make funds
available to any school that releases a student's records without a parent's consent or
pursuant to a lawfully issued subpoena. The denial of a proper discovery request, either
during or before trial, may violate a defendant's due process rights. Thomas v. State, 837
S.W.2d 106, 111–12 (Tex. Crim. App. 1992); Valdez v. State, 116 S.W.3d 94, 99 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref'd); Ealoms v. State, 983 S.W.2d 853, 860 (Tex.
App.—Waco 1998, pet. ref'd). 
          Discovery requests by defendants in criminal cases are an area of the law that is
deserving of attention. The rules and statutes address to some extent requests for
discovery by a defendant from the state, or requests for subpoenas of documents from a
witness. See Tex. Code Crim. Proc. Ann. art. 42.01, et seq. (Vernon 1979 & Supp. 2004). 
They do not cover this situation, where defense counsel seeks documents not from the
State, but from a public school. Counsel states that his purpose in seeking B.B.'s
disciplinary records was to determine whether he could obtain information that would then
direct him to individuals in the school who could speak with knowledge about B.B.'s
reputation as a truthful or untruthful person. See Tex. R. Evid. 404, 405 (methods of
proving character), 607, 608 (impeachment by evidence of character). 
          The rules do not address this matter. In Cooks v. State, 844 S.W.2d 697, 736 (Tex.
Crim. App. 1992), the court addressed an issue where a defendant complained he could
not effectively cross-examine his teacher's reputation testimony because he did not have
certain school records. The court did not hold that such records were unavailable, instead
focusing on the lack of any showing of harm resulting from the unavailability of those
records. 
          In cases from other jurisdictions, an Arizona court of appeals in State v. Birdsall, 568
P.2d 1094 (Ariz. Ct. App. 1977), reviewed a general criminal rule specifically allowing
discovery in criminal cases, noting that school disciplinary records would definitely be
relevant and material where the issue was the reputation for aggressiveness and
belligerence of the victim, and found no abuse of discretion in allowing disclosure. 
Similarly, an Illinois court of appeals in People v. Monk, 528 N.E.2d 1063, 1068 (Ill. App.
Ct. 1988), discussed the method to be used when a school authority refused to produce
school files. In that case, the defendant was also seeking to use the files for cross-examination, in connection with an attempt to ascertain a teacher's reasoning about the
credibility of the victim. That court used essentially the same procedure utilized in this
case: an in camera inspection by the trial court with an ensuing determination of whether
the documents were relevant and material. 
          In Zaal v. State, 602 A.2d 1247 (Md. 1992), the court made a detailed analysis of
the privacy and confidentiality considerations involved in the release of school records in
the context of an allegation of sexual child abuse by a grandfather on his granddaughter. 
The court recognized that the issue, quite clearly, was one of credibility of the witness and
that the need was to determine whether the documents would be admissible, either
directly, or usable for impeachment purposes, or that which would lead to such evidence. 
That court agreed some type of in camera inspection would be appropriate and directed
the trial court to utilize a modified form of in camera inspection with the option of allowing
controlled access by counsel to the records so that the sides could act as advocates for
their respective positions in determining the admissibility of the portions of the record found
to be relevant. Id. at 1264. 
          We conclude that the in camera inspection performed by the trial court is a
procedure adequate to protect the defendant's rights and ability to fairly present his or her
case. Further, we have reviewed the documents. They generally reflect mild to violent
misbehavior by B.B., as shown by several removals from the general school populace and
from school transportation. We cannot say, however, that there is anything in those
documents that could be used for impeachment or that shows B.B.'s reputation for
truthfulness or untruthfulness. We, therefore, conclude no error has been shown in
declining to order the documents produced. The contention of error is overruled.
Prejudicial Extraneous Testimony
          May next contends the trial court erred by allowing Baird to introduce prejudicial
extraneous matters before the jury over his objection. The complained-of testimony is
included in the following context:
QWhere did he [May] come to talk to you?
AAt my place of employment.
QOkay. Go ahead, please.
AAnd he had told me that it never happened, and he had told me
that previously he had --
 
[Defense Counsel]: Your Honor, may we approach the bench? 

Although it is possible the witness was about to go into inappropriate matters, she did not
do so before defense counsel intervened. The testimony actually given does not implicate
any wrongdoing by May. No error has been shown.
Hearsay Testimony
          May next contends the trial court erred by overruling his objection to specific
hearsay testimony. In the testimony, the prosecutor was asking Baird about a conversation
she had with Alderete, who later testified.



QDid she [Alderete] tell you why she suspected [molestation]?
 
AWell, in a way, yes, she did, because she told me that he was
close to [B.B.]
 
[Defense Counsel]: Your Honor, I'm going to object, it's
hearsay.
 
THE COURT: Overruled.
 
QGo ahead.
 
AShe told me that he was close to [B.B.], and it's like everything
was for [B.B.], like numerous pictures and the things that he had bought
[B.B.], TV's [sic], VCR's [sic], gymnastic mats, just numerous things he had
bought her, and when they found out he had started a trust fund in her name,
and she told me that she suspected it because of all of that. 

          Hearsay is a statement, other than one made by the declarant while testifying at the
trial, offered for the truth of the matter asserted. Tex. R. Evid. 801(d). The State argues
this is not hearsay because the recounted statement is not one recounted for fact, but for
the declarant's belief or opinion about her suspicions, not statements of fact. Such
reasoning, if approved, would make any opinion admissible, even though the facts on
which such opinion is based are inadmissible, without recourse to the hearsay objection. 
This is not consistent with the rule. "Matter asserted" includes any matter explicitly
asserted, and any matter implied by a statement, if the probative value of the statement
as offered flows from the declarant's belief as to the matter. Tex. R. Evid. 801(c). Hearsay
evidence is not admissible. See Tex. R. Evid. 802. The matter asserted in this case was
the opinion. It was hearsay and inadmissible. 
          We now turn to a harm analysis. In our review of nonconstitutional error, we are to
disregard errors, defects, irregularities, or variances that do not affect substantial rights of
the accused. Tex. R. App. P. 44.2(b). A "substantial right" is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it
appears the error "did not influence the jury, or had but a slight effect," we must conclude
that the error was not harmful and allow the conviction to stand. Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In order to properly conduct a harm analysis under Rule 44.2(b), we conduct a harm
analysis as a type of "other errors," and we must disregard the error unless it "affect[ed]
[appellant's] substantial rights." Tex. R. App. P. 44.2(b). For claims of nonconstitutional
error, the Texas Court of Criminal Appeals has held that "a conviction should not be
overturned unless, after examining the record as a whole, a court concludes that an error
may have had 'substantial influence' on the outcome of the proceeding." Burnett v. State,
88 S.W.3d 633, 637 (Tex. Crim. App. 2002). In other words, if we have "a grave doubt"
that the result was free from the substantial influence of the error, then we must reverse. 
Id. The court has explained that "grave doubt" means that "in the judge's mind, the matter
is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of
the error." Id. at 637–38, citing O'Neal v. McAninch, 513 U.S. 432, 435–36 (1995). Thus,
"in cases of grave doubt as to harmlessness the petitioner must win." Id. at 638.
          In considering harm, we must review the entire record to determine whether the
error had more than a slight influence on the verdict. See King, 953 S.W.2d at 271, citing
Kotteakos v. United States, 328 U.S. 750, 776 (1946); Reeves v. State, 969 S.W.2d 471,
491 (Tex. App.—Waco 1998, pet. ref'd). If the court finds that the error did have more than
a slight influence on the verdict, it must be concluded that the error affected the
defendant's substantial rights in such a way as to require a new trial. Reeves, 969 S.W.2d
at 491. If the court has grave doubts about the error's effect on the outcome, the case
must be remanded for a new trial. Id. Otherwise, the court should disregard the error. Id.;
Lopez v. State, 990 S.W.2d 770, 778 (Tex. App.—Austin 1999, no pet.).
          The hearsay at issue was presented by the State during its case-in-chief before
Alderete testified. At best, it constitutes a pre-emptive strike on her expected testimony,
for the State cannot make the argument that it was impeachment evidence because
Alderete had not yet testified. Alderete categorically denied that she said what Baird
attributed to her. The harm lies in the fact the State was improperly allowed to present
evidence through the outcry witness that Alderete had suspected that May was molesting
B.B. even before she had made any outcry. The recounting of her suspicion is a portion
of the testimony that does not appear elsewhere. 
          As previously discussed, from a factual sufficiency viewpoint, the evidence in this
case is conflicting. When that is the case, an error in admitting evidence, that would not
otherwise be egregious, may nevertheless have profound results. However, under all of
the facts of this case, and after a complete review of the record, we find it unlikely that the
single recounting of hearsay about a witness' "suspicion," especially when strongly and
directly denied by the declarant herself, had more than a slight influence on the verdict. 
The contention of error is overruled.
Conclusion
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      June 23, 2004
Date Decided:         June 24, 2004

Publish